[No. 25080. Department Two. June 28, 1934.]

ROBERT B. ELLIOTT, *Respondent*, v. THE SEATTLE COMPANY, *Appellant*.[1]

*Roberts & Skeel* and *Wm. Paul Uhlmann*, for appellant.

*H. E. Foster*, for respondent.

TOLMAN, J.—Respondent, as plaintiff, instituted this action to recover the sum of nineteen hundred dollars, the value of certain stocks belonging to him, which he alleged had been converted by the defendant.

The cause was tried to the court, sitting without a jury, resulting in findings of fact favorable to the

[1]Reported in 34 P. (2d) 442.

plaintiff and a judgment against the defendant as prayed for. The defendant has appealed.

In the final analysis, this case turns, as we see it, upon a very narrow issue of fact.

The respondent alleged and his proof tended to show that, at the time in question, he was the owner of certain bonds which he had purchased from the appellant and for which he had fully paid. Becoming dissatisfied with his investment, he went to the salesman in appellant's employ, with whom his previous transactions had been effected, and proposed turning in his bonds, previously purchased, in exchange for other securities, chiefly for American Telephone & Telegraph Company stock.

Without going into details of the several conversations referred to in the testimony, it is sufficient to say that, according to respondents' evidence, an agreement was arrived at between himself and the salesman to the effect that he should turn in his bonds at ninety-five per cent of their face value, or at a total value of nineteen hundred dollars, in exchange for eight shares of American Telephone & Telegraph Company stock at an agreed value of $1,084 and one hundred fifty shares of Diversified Trustees shares at an agreed value of $881.25, making a total of $1,965.25, and that, upon the delivery of these securities to him, he would pay in cash the difference of $65.25. Admittedly, the respondent promptly delivered his bonds to the appellant, and also admittedly the securities named were never tendered to respondent with a demand for $65.25, in accordance with his version of the contract.

Upon the other hand, the salesman who represented appellant in the transaction testified to the effect that the respondent, desiring to change his investment, proposed the sale of his bonds and the reinvestment of the proceeds in the securities we have mentioned; that

he was informed that the appellant would not buy the bonds at a price greater than ninety per cent of their face value, but that, probably, the bonds could be sold on the open market at ninety-five per cent, and, if so, the desired securities could be purchased with the proceeds plus $65.25 to be paid in cash.

The salesman further testified that respondent agreed to this proposition, deposited his bonds, received a receipt therefor showing that they were deposited for sale, and gave an order for the purchase of the securities which he desired; that this order was executed, the appellant advancing the money for the purchase, and that the purchased securities and the bonds were held as collateral security for the advances so made under a collateral security agreement, such as is usual between brokers and their customers in cases where credit is given. The bonds turned in by respondent could not be sold on the market at ninety-five per cent, and having no order to sell for a less price, they were never sold.

There is a sharp and vital conflict between these two witnesses. Each is personally interested, the one in the recovery of a substantial sum of money, the other in the protection of his reputation and business standing which may be more valuable than money. The trial judge, who heard and saw both witnesses, accepted the respondent's version, and we are now asked to hold that the evidence preponderates against such a finding.

There are various minor details in the evidence, some tending in one direction and some in the other, but nothing of that sort warrants special mention save only the written receipt which was given to the respondent when he deposited his bonds with the appellant, upon which appellant now lays great stress.

The bonds were delivered to appellant's cashier, in

the absence of the salesman with whom the arrangement had been made, a day or two following the making of whatever agreement was made, and a receipt was issued by the cashier and delivered to the respondent in which was incorporated ''To be sold for your a/c.'' Respondent testified that, at the time, he so far examined the receipt as to see that the bonds were properly described and enumerated therein, but no further, which is not unusual if his version of the facts be the true one.

A receipt, generally speaking, is not a contract or evidence of a contract, and may be explained or contradicted by parol evidence. *Allen v. Tacoma Mill Co.*, 18 Wash. 216, 51 Pac. 372; *Pickering v. Roeder*, 104 Wash. 539, 177 Pac. 321.

Moreover, as both witnesses agree that respondent was, by their agreement, left free to proceed under it or not as he might choose, and that it was to become effective only if he chose to so proceed, it is at once apparent that there was no imperative reason why the salesman should advise the cashier of what was contemplated in advance of the deposit of the bonds; and the cashier, not being advised of any special agreement, would, of course, issue only the usual and ordinary form of receipt. We think, under all of the facts and circumstances disclosed by the record, that the receipt, in and of itself, is of no weight in determining what were the terms and conditions of the contract which was made before it was issued.

We cannot hold that the evidence preponderates against the facts found by the trial court.

It is suggested that the finding as to the time or date when the conversion took place is insufficient, and that, as damages are to be measured by the value of the thing converted at the time of conversion, the

judgment cannot stand. This argument overlooks other facts found. From the findings as a whole, it was clearly appellant's duty to tender the stock as soon as purchased, and to deliver it upon payment of the balance due it of $65.25. Having failed to so tender the stock, or to tender it at all, and having asserted the right to hold the stock as collateral security for the whole of the purchase price from the moment of the purchase, there was a conversion at the time of the purchase, and the price then paid on the open market is an excellent criterion of the reasonable value of the stock.

The judgment of the trial court is affirmed.

BEALS, C. J., HOLCOMB, BLAKE, and GERAGHTY, JJ., concur.