[No. 2732-1.    Division One.    September 29, 1975.]

MERCHANTS LEASING COMPANY, *Respondent*, v. JAKE G. CLARK, *Defendant*, SHERRY L. CLARK, *Appellant*.

*Bertil A. Granberg*, for appellant.

*Karr, Tuttle, Koch, Campbell, Mawer & Morrow* and *Mary Ellen Hanley*, for respondent.

ANDERSEN, J.—

## FACTS OF CASE

The written agreement out of which this litigation arose is entitled "Lease of Personal Property." The property which was the subject of the agreement was a pressure cooker to be used for cooking chicken at Smokey Joe's Tavern in Snoqualmie, Washington.

Signing the document as "lessee" was the tavern proprietor, Jake G. Clark. He and his then wife, Sherry L. Clark, who are the defendants in this case, for convenience will be referred to as "lessees."

Signing as "lessor" was the assignor of Merchants Leasing Company, the plaintiff herein. No issue is raised here as to the legal significance of the assignment, so for the purposes of this appeal both assignor and assignee will be treated as though they were a single party and will be referred to as "lessor."

The agreement purported to be a noncancelable 60-month lease whereby the lessees agreed to pay $97.62 per month over the full term of the lease. Thereafter lessee was given the option to renew the lease for not more than three successive 1-year terms at a rate of $97.62 a year.

The agreement provided that title was to remain in the lessor. It did not give the lessees an option to purchase. There was no testimony at the trial concerning any practice or side agreement with respect to the granting of such an option to the lessees. Neither was there any testimony that the agreement was intended as other than that which it purported to be, a lease of personal property.

The agreement by its terms provided certain remedies to the lessor in the event of the lessees' default in their monthly payments.

The agreement provided in clause 21 (Appendix), that one of the ways in which the lessor could proceed on default by the lessees was as follows: accelerate the rental by

declaring all unpaid rental for the entire term of the lease due and payable; repossess the property; dispose of the property in any commercially reasonable manner after giving notice to the lessees; and recover from the lessees the deficiency remaining (after giving credit for the proceeds of the sale of the property) together with certain of lessor's costs including reasonable attorneys' fees.

The lessees defaulted in their payments under the lease and the lessor undertook to proceed along the course outlined. The uncontroverted testimony at the trial was that Mr. Clark had left the area and Mrs. Clark succeeded him in the operation of the tavern. It was likewise uncontroverted that the lessor had difficulty in locating and repossessing the property until ultimately Mrs. Clark telephoned the lessor and advised where it could be obtained.

For reasons not material to this appeal, no notice was given by the lessor to the lessees that it intended to sell the property in question. The lessor proceeded to sell the pressure cooker and credited the $1,000 sales price to the deficiency claimed from the lessees.

The uncontroverted testimony at the trial was that the lessor sold the property in an arm's length transaction to an independent tavern supplier for the sum of $1,000.

The lessor sued the Clarks as lessees along with their marital community. A default was taken as to Mr. Clark. After trial to the court, findings of fact, conclusions of law and a judgment were entered against Mr. Clark and the former marital community. No judgment was entered against Mrs. Clark individually. The judgment was in the amount of $5,419.97 and taxable costs. The principal items of damage included in the judgment were the unpaid lease rental and $1,000 as attorneys' fees.

A cross claim had been filed by Mrs. Clark and the marital community and following the trial, it was dismissed with prejudice by the trial court. The cross defendants, Merchants Finance Company and William Danz, were dismissed out of the case by that same order. No appeal was taken from those dismissals or from the judgment against

Mr. Clark. The case is here on this appeal brought by Mrs. Clark on behalf of the former marital community.

## ISSUE

Under the "Lease of Personal Property" agreement herein, did the repossessing lessor which repossessed the equipment covered by the agreement and then sold it without giving notice to the lessees, thereby lose its right to recover a deficiency judgment against the lessees?

## DECISION

After personal property covered by an equipment lease has been repossessed by the lessor, the rights of the lessor and lessees are determined by the lease itself and by the law of bailment. In the present case, the lessor did not lose its right to a deficiency judgment against the lessees by selling the repossessed equipment without giving the lessees notice of the sale as required by the lease. The lessees were, however, entitled to have any damages caused to them by such lack of notice credited against the deficiency judgment.

Equipment leases have become increasingly popular in the business community over recent years. They enable the financer of the equipment to protect its investment by retaining title to the property while at the same time admitting of a number of distinct financing, accounting, tax and other advantages.

In the construction of a lease, as with any other contract, the primary rule of construction is that the court will endeavor to ascertain the intent of the parties as expressed by the language of their agreement. *Schorzman v. Kelly*, 71 Wn.2d 457, 460, 429 P.2d 217 (1967).

The lessee who brings this appeal argues that the acknowledged failure of the lessor to give notice of the sale of the repossessed property as required by the terms of the agreement, was a breach of a condition precedent requiring reversal of the trial court's judgment.

The giving of notice is not a condition precedent to the operation of the acceleration clause, by which all of the unpaid rental was declared due and owing. The agreement

provides in that connection that in the event of default the lessor may "[w]ithout notice to Lessee, accelerate the rental . . ." No authority has been presented to this court that this acceleration clause is not valid and enforceable.

The notice proviso is found in that portion of clause 21 of the agreement which relates to the lessor's right to dispose of repossessed property. It reads as follows:

Lessor shall give Lessee at least ten (10) days written notice of a date after which Lessor will dispose of said property. Prior to the giving of such notice the leased property shall be deemed to be held by Lessor for the benefit of Lessee, and at any time after repossession by Lessor and before the date set in said written notice as the date after which Lessor will dispose of said property, Lessee shall have the right to regain possession of the leased property for the unexpired balance of the term of this lease by paying to Lessor the then unpaid balance of the rental due for the entire term of this lease, plus costs of repossession and other costs and charges to be paid by Lessee under the terms of this lease.

The agreement gave the lessor the right to repossess the property as it did. It thus legally held the property in its possession. As required by the above-quoted portion of the agreement, however, "the leased property shall be deemed to be held by Lessor for the benefit of Lessee, . . ." This is bailment language. *See* 8 Am. Jur. 2d *Bailments* § 2 (1963); 8 C.J.S. *Bailments* § 1 (1962). As such, it accords with the view generally taken in such transactions to the effect that the rights of the lessor on the occasion of the lessee's default are traditionally determined by the law of bailments. *See* 49 Cornell L.Q. 672, 677 (1964) and authorities therein collected.

From the time that the lessor repossessed the property to the time it gave the required notice to the lessees, it thus stood in the position of bailee of the property with the lessees as bailors.

When the lessor sold the property, it converted it as to the lessees. While it is true that the lessees did not have legal title to the property, they did have the right under

the portion of the agreement above quoted to regain possession of it. One of the ways in which conversion of property may be committed by a bailee, is by acting in derogation of the bailor's possessory rights. *See* discussions in 8 Am. Jur. 2d *Bailments* § 106 (1963) and 8 C.J.S. *Bailments* § 31 (1962). The lessor was guilty of such a conversion here when it sold the equipment without giving the required notice to the lessees.

▉▉ The damages to which the lessees were entitled for this willful conversion was the highest market value of the property within a reasonable time after the conversion, or as sometimes stated, the highest price shown between the time of the conversion and the institution of suit. *Glaspey v. Prelusky*, 36 Wn.2d 592, 595, 219 P.2d 585 (1950).

At the trial of this case, the only market value or price shown by the evidence was $1,000, the price paid for the pressure cooker by the tavern supply company which bought it from the lessor. The lessees had the right under the pleadings to show that the value of the property was in actuality higher than the sale price. The lessee was invited by the trial court to put on evidence as to higher value of the pressure cooker but did not do so. Neither was any evidence presented as to other loss caused to the lessees by the sale.

Under the evidence, lessees were entitled to $1,000 as damages for the lessor's conversion. That is the sum the trial court credited to them although it did so under the lease proviso which so required it. Accordingly, there was no reversible error in this regard.

▉ Although the Uniform Commercial Code, RCW Title 62A (hereafter "code") was not cited by either party, we nevertheless deem it necessary to refer to it in order to make clear the narrow context within which our present decision is rendered.

Article 9 of the code provides statutory self-help remedies that are strikingly similar to those provided by clause 21 of the agreement (Appendix) including the right to sell the designated property after notice. RCW 64A.9-207; RCW

62A.9-501 through -507. *See also* Heath, *Remedies and Collateral Liquidation Under Uniform Commercial Code Article 9,* 4 Gonzaga L. Rev. 217 (1969).

A so-called "true lease" is not covered by the code whereas a lease "intended as security" is a "security interest" and, therefore, subject to the code. RCW 62A.1-201(37). The question as to which of these two classifications a given lease falls within is often of profound importance to the rights of the parties and creditors, and has caused significant interpretive problems to the courts required to make such determinations.[1]

Divisions Two and Three of the Court of Appeals have considered the effect of a failure to give notice of the sale of collateral on security transactions under the code. *Grant County Tractor Co. v. Nuss,* 6 Wn. App. 866, 496 P.2d 966 (1972); *Commercial Credit Corp. v. Wollgast,* 11 Wn. App. 117, 521 P.2d 1191 (1974). In both cases, the failure to give notice of the sale was held to give the party denied notice a right to credit any loss so caused against the deficiency, but not to invalidate the deficiency judgment itself. *Grant County Tractor Co. v. Nuss, supra; Commercial Credit Corp. v. Wollgast, supra.*

Thus, even if the measure of damages under the code as declared in *Grant County Tractor* and *Commercial Credit* was here applied, under the evidence presented lessees would be entitled to no other or further relief than has already been granted below.

The code having been neither mentioned nor cited to this court by either party, and as far as the appellate

---

[1] *See* discussions in R. Henson, *Secured Transactions Under the Uniform Commercial Code* § 3-12 (1973); J. White & R. Summers, *Uniform Commercial Code* § 22-3 (1972); Hawkland, *The Proposed Amendments to Article 9 of the UCC—Part 5: Consignments and Equipment Leases,* 77 Com. L.J. 108 (1972); Peden, *The Treatment of Equipment Leases as Security Agreements Under the Uniform Commercial Code,* 13 Wm. & Mary L. Rev. 110 (1971); Del Duca, *Evolving Standards for Distinguishing a "Bona Fide Lease" from a "Lease Intended as Security"—Impact on Priorities,* 75 Com. L.J. 218 (1970); Leary, *Leasing and Other Techniques of Financing Equipment Under the U.C.C.,* 42 Temp. L.Q. 217 (1969); and 49 Cornell L.Q. 672 (1964).

record reflects not having been mentioned or cited to the trial court, we do not here rule on the effect of the code on a transaction of the kind before us. *Commercial Credit Corp. v. Wollgast, supra; Soderberg Advertising, Inc. v. Kent-Moore Corp.*, 11 Wn. App. 721, 736, 524 P.2d 1355 (1974); and *Dickson v. Pullman*, 11 Wn. App. 813, 818, 525 P.2d 838 (1974).

Judgment affirmed.

WILLIAMS, C.J., and FARRIS, J., concur.

# APPENDIX

21. In the event of default by Lessee, Lessor may, at its option, (1) Declare this lease terminated and Lessee's tenancy forfeited, repossess the leased property, and recover from Lessee for any damage or loss to Lessor; or (2) Without notice to Lessee, accelerate the rental by declaring all unpaid rental for the entire term of this lease immediately due and payable in full. In the event Lessor elects to accelerate the rental and declare all unpaid rental for the entire term immediately due and payable in full, Lessor may, at its option, retake possession of the leased property, and Lessor is hereby given the right to enter any premises wherein the leased property is situate or wherein Lessor believes the leased property to be situate, with or without legal process, and take possession of the leased property, Lessee hereby waiving any right of action for trespass or damages by reason of said entry and removal; notwithstanding repossession by Lessor, Lessee shall be liable to Lessor for all unpaid rental for the full term of this lease. Upon repossession, Lessor shall have the right at its option to dispose of said leased property in any commercially reasonable manner. Lessor shall give Lessee at least ten (10) days written notice of a date after which Lessor will dispose of said property. Prior to the giving of such notice the leased property shall be deemed to be held by Lessor for the benefit of Lessee, and at any time after repossession by Lessor and before the date set in said written notice as the date after which Lessor will dispose of said property, Lessee shall have the right to regain possession of the leased property for the unexpired balance of the term of this lease by paying to Lessor the then unpaid balance of the rental due for the entire term of this lease, plus costs of repossession and other costs and charges to be paid by Lessee under the terms of this lease. Lessor shall have the right to dispose of the leased property in any commercially reasonable manner after the date set forth in the notice as the date after which Lessor will dispose of the property. Disposition of the property may be made by Lessor in any commercially reasonable manner, including re-leasing or sale to another. It is specifically agreed that re-leasing or sale by Lessor in any one of the following alternatives shall be conclusively deemed to be disposition in a commercially reasonable manner: (a) advertising in the classified section of a daily newspaper, in Seattle, King County, Washington, for a period of seven (7) consecutive days, that the leased property is for sale to the best cash offer, and selling to the highest cash offer received; or (b) consignment for sale to an auction house or auctioneer for sale in the regular course of business, or at a special sale as shall be determined by the auction house or auctioneer; or (c) offering for sale to not less than two persons, firms or corporations dealing in property generally of the same type as the leased property, one of which may be the supplier of the leased property, and selling to the highest cash bidder. Disposition may also be made by the Lessor in any other commercially reasonable manner. Proceeds of disposition shall be applied as follows and in the following order: (1) to expenses of repossession; (2) to expenses of holding and storing the property; (3) to expense of reasonable repairs in preparation of the property for selling or leasing; (4) to expense of leasing or selling; (5) to attorney's fees and legal expenses incurred by Lessor, and (6) to the unpaid rental owing by Lessee to Lessor. Any proceeds remaining after the foregoing applications shall be turned over to Lessee. Lessee shall pay to Lessor any deficiency owing to Lessor after said application.