MARCIA B. SCHUG AND ANOTHER, CO-EXECUTORS
OF THE ESTATE OF KENNETH J. SCHUG, v.
JAMES H. MICHAEL.

245 N. W. 2d 587.

August 13, 1976—No. 46186.

*Efron & Kittler, Stanley Efron,* and *Peter H. Hitch,* for appellant.

*Lapp, Lazar, Laurie & Smith, Gerald T. Laurie,* and *David A. Libra,* for respondents.

Heard before Rogosheske, Kelly, and Scott, JJ., and considered and decided by the court en banc.

KELLY, JUSTICE.

Defendant, James H. Michael, appeals from an order of the district court denying a motion for a new trial or in the alternative, amended findings of fact, conclusions of law, and order for judgment, following a judgment entered in favor of plaintiffs, co-executors of the estate of Kenneth J. Schug. We affirm in part and remand for further proceedings.

Schug, an investor, was a shareholder in Mustang Investment Corporation. Defendant, an attorney, was an original incorporator and chairman of the board of directors of that corporation and the owner of 50,000 shares of the corporation's initial capital stock, which represented 50 percent of the total "insider stock" issued, for which defendant paid $ .50 per share, or $25,000.

Defendant assigned the beneficial interest in 30,000 shares of his stock to various persons, including Schug. Schug and defendant met through Lyle R. Morris, an attorney and business associate of both parties, in the fall of 1968. Schug paid $3,500 or $ .50 per share for 7,000 shares of defendant's Mustang stock. This "purchase" was represented by a trust agreement dated January 2, 1969, providing as follows:

"TRUST AGREEMENT

"KNOW ALL MEN BY THESE PRESENTS, that I, James H. Michael, of the City of St. Paul, State of Minnesota, herein referred to as Trustee, being the owner of 50,000 shares of capital stock of MUSTANG INVESTMENT CORPORATION as evidenced by Certificate No. 101, issued by MUSTANG INVESTMENT CORPORATION, and subject to an escrow agreement for five (5) years, do hereby set aside and hold apart 7000 shares of said stock and do hereby transfer and deliver to myself as Trustee for the use and benefit of Kenneth J. Schug hereinafter referred to as beneficiary, for the following purposes and on the following terms and conditions:

"To receive and collect the income, profits, interest and dividends and to pay the income to the beneficiaries.

"Upon the death of the Trustee, the trust hereby created shall cease and the principal of the trust fund shall be paid over to the beneficiaries absolutely and free from any claim hereunder.

"In the event that any stock dividends shall be declared on any stock held under this indenture, the stock received pursuant thereto shall for all purposes be deemed and treated as principal, even if the stock dividends shall represent earnings. Likewise, in the event the number of shares held pursuant to this indenture shall increase pursuant to a stock split, or stock dividends, the additional number of shares shall be treated as principal and shall be treated the same in all respects as the original stock recited in this indenture.

"Dated this 2nd day of January, 1969.

"/s/ James H. Michael."

The escrow agreement referred to was executed December 19, 1968, and placed all of the initial stock in escrow pursuant to the requirements of the Minnesota Securities Commission.

Charles R. Quigley joined the board of directors of Mustang in October or November 1969, at a time when defendant was also a member of the board. Quigley and defendant began to disagree immediately on the business policy of the corporation. Quigley

offered to purchase defendant's shares, ostensibly for the purpose of gaining a controlling interest in Mustang, at $ .50 per share in December 1969. Defendant rejected the offer. Thereafter, Quigley made constant offers to buy defendant's stock, although the record is not entirely clear as to specific prices discussed. Defendant did not mention to Schug at any time Quigley's interest in the shares or Quigley's offers to buy, although Schug's shares constituted a part of defendant's total shares which were the subject of the negotiations between Quigley and defendant.

On November 2, 1970, defendant paid Schug $1 per share for 6,000 of the 7,000 shares of Schug's stock held under the trust agreement. On May 3, 1971, defendant sold 30,000 shares of Mustang stock (including the 6,000 he had reacquired from Schug) to Quigley for $3.50 per share. This represented a net profit to defendant of $2.50 per share on Schug's shares, or a total of $15,000.

On June 7, 1971, according to Schug's testimony, Morris came to Schug and asked for Schug's trust agreement governing the remaining 1,000 shares. Schug testified that Morris stated that he was collecting the trust agreement for the purpose of obtaining a release of the stock from the escrow requirements imposed by the commissioner of securities. Schug surrendered his agreement to Morris, endorsing it in blank. Schug testified that no consideration was paid for the transfer.

Morris died on September 13, 1971, without having returned the trust agreement or any stock to Schug. Schug attempted to obtain the agreement from the executor and attorneys of the Morris estate, but he was unsuccessful because the document could not be located. Schug also contacted defendant concerning the whereabouts of the agreement, but defendant, initially, denied any knowledge of it. When Schug called defendant on August 23 or 24, 1972, however, defendant informed him that he had transferred Schug's shares to Morris because of Morris'

possession of the endorsed trust agreement. Schug demanded that defendant return the stock, but defendant refused.

Schug brought this action in the district court alleging breach of fiduciary duty by defendant as trustee of Schug's stock. The co-executors of Schug's estate were substituted as parties on appeal after Schug's death. The trial court made findings of fact and conclusions of law and ordered judgment against defendant for $29,500, representing: (1) $15,000 for the profit made on the sale of Schug's 6,000 shares to Quigley; and (2) $14,500 for the 1,000 shares of stock wrongfully transferred to Morris, measured by the highest value which that stock reached within a reasonable time after Schug demanded and defendant failed to deliver the 1,000 shares.

Defendant raises three issues on appeal:

1. Did defendant breach his trust or fiduciary relationship with Schug?

2. Did Schug's transfer and endorsement of his trust agreement estop him from claiming his interest under the agreement or otherwise terminate that interest?

3. Did the trial court err in fixing the date on which Schug learned of defendant's alleged conversion of the 1,000 shares, which it then used to fix the time of valuation of that stock for purposes of ascertaining damages?

■ Defendant initially argues that he had no fiduciary or trustee obligations to Schug, and, further, if he did, he did not breach any such obligation. Restatement, Trusts 2d, § 2, defines a trust as follows:

"A trust, as the term is used in the Restatement of this Subject, when not qualified by the word 'charitable,' 'resulting' or 'constructive,' is a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it."

Comment *b* to that section describes a fiduciary relationship in the following terms:

"A person in a fiduciary relation to another is under a duty to act for the benefit of the other as to matters within the scope of the relation. A fiduciary is normally under a duty not to delegate to a third person the performance of his duties as fiduciary. See § 171. As to matters within the scope of the relation he is under a duty not to profit at the expense of the other and not to enter into competition with him without his consent, unless authorized to do so by a proper court or by the provisions under which the relation arose. See § 170(1). If the fiduciary enters into a transaction with the other and fails to make a full disclosure of all circumstances known to him affecting the transaction or if the transaction is unfair to the other, the transaction can be set aside by the other. See § 170(2)."

In In re Declaration of Trust by Bush, 249 Minn. 36, 43, 81 N. W. 2d 615, 620 (1957), this court listed three elements of an express trust:

"* * * In order to constitute an express trust there must be: (1) a designated trustee subject to enforceable duties, (2) a designated beneficiary vested with enforceable rights; and (3) a definite trust res wherein the trustee's title and estate is separated from the vested beneficial interest of the beneficiary."

In that case, the court held that an express trust was clearly created where the evidence showed that the alleged settlor-trustee had had stock issued in the name of his niece and had "put the stock away" for her. Certificates were retained by the settlor-trustee and dividends were paid directly to the alleged beneficiary.

Under the circumstances in this case, we conclude that Schug and defendant had a trust relationship. While use of the words "trust agreement," "trustee," and "beneficiary" in the instrument executed by the parties is not dispositive of the question of a trust relationship, In Re Application of Mareck to Register

Title, 257 Minn. 222, 100 N. W. 2d 758 (1960), it is persuasive evidence that defendant, an attorney who drafted the instrument himself, intended a trust relationship. Furthermore, defendant was the designated trustee under the trust agreement and had the express duty of setting aside and holding the stock for Schug, as well as collecting and paying dividends. Schug was expressly designated beneficiary with rights corresponding to the duties of the trustee just enumerated. There was a definite res—the stock—and the trustee held a legal interest in the res subject to the beneficiary's equitable interest. In summary, the relationship created by the trust agreement and the entire investment transaction required defendant to act for the benefit of Schug in holding stock and paying dividends. This is a trust relationship under § 2 of the Restatement and under Minnesota case law.

Assuming arguendo some kind of trust relationship, defendant maintains that his obligation to Schug was a narrow one and was not breached by defendant's purchase of stock from Schug without full disclosure of underlying facts. On the contrary, the circumstances of this case and existing law reveal a much broader obligation on the part of defendant and a serious breach of that obligation.

Defendant undertook to sell Schug a portion of his own insider stock and to retain control of that stock under the trust agreement. Defendant conceded that this was in direct violation of his escrow agreement that he not sell such stock, and even argued before the trial court that this was a criminal violation of Minnesota securities law which voided the trust agreement. Nevertheless, after having illegally sold a beneficial interest to Schug and other parties, defendant continued to seek for himself the best of all possible worlds. He apparently represented to others, including Quigley, that he owned a full 50,000 shares, and he even stated falsely in an affidavit in his own shareholder's action that he owned 50,000 shares. He then proceeded to engage in further trafficking of the escrowed shares by buying them back from Schug and other beneficiaries of similar trusts to aid

in his control dispute with Quigley. The result was a substantial profit for him and a somewhat lesser return for his ill-used beneficiaries.

Defendant's course of conduct reveals violations of several important duties to his beneficiary. First, he breached his duty of loyalty by purchasing (and trafficking in) trust property. Restatement, Trusts 2d, § 170, provides:

"(1) The trustee is under a duty to the beneficiary to administer the trust solely in the interest of the beneficiary.

"(2) The trustee in dealing with the beneficiary on the trustee's own account is under a duty to the beneficiary to deal fairly with him and to communicate to him all material facts in connection with the transaction which the trustee knows or should know."

Comment b to that section provides in part:

"* * * A trustee with power to sell trust property is under a duty not to sell to himself either by private sale or at auction, whether the property has a market price or not, and whether or not the trustee makes a profit thereby. It is immaterial that the trustee acts in good faith in purchasing trust property for himself, and that he pays a fair consideration."

Here, defendant not only purchased (or repurchased) trust property, but he failed to disclose his offers from and disputes with Quigley, which were obviously material facts to Schug, his beneficiary.

Second, defendant also breached duties to take and keep control of trust property, to preserve trust property, and to keep trust property separate from his own. Restatement, Trusts 2d, §§ 175 and comment c, 176, and 179. His activities in representing his own ownership of the shares and trafficking in them without disclosure are the kind of intermingling to the detriment of beneficiaries that these sections contemplate.

We conclude that there is ample evidence to sustain the district

court's findings of a trust relationship and serious breach of fiduciary duty by defendant as trustee.

There is no question as to the measure of Schug's damages with respect to the shares sold Quigley—it is the amount of defendant's profit on his sale of Schug's 6,000 shares of Mustang stock. Therefore, the portion of the district court's judgment imposing a constructive trust upon these 6,000 shares and awarding plaintiff $15,000 is affirmed.

■ The district court also found that defendant had converted Schug's 1,000 shares by wrongfully crediting them to Morris. Defendant responds that Schug's actions in surrendering the trust agreement to Morris and endorsing it in blank were sufficient to terminate Schug's interest in the 1,000 shares. At the outset, it should be noted that: (1) The trust agreement, which was neither a negotiable instrument nor a stock certificate, was merely endorsed in blank, not specifically assigned to Morris or anyone else; and (2) in receiving the trust agreement from Morris, defendant was not an innocent third party, but the trustee who had originally executed the agreement.

Under these circumstances, at the very minimum, defendant had an obligation to verify Schug's intent before transferring his shares. Restatement, Trusts 2d, § 226, provides:

"If by the terms of the trust it is the duty of the trustee to pay or convey the trust property or any part thereof to a beneficiary, he is liable if he pays or conveys to a person who is neither the beneficiary nor one to whom the beneficiary or the court has authorized him to make such payment or conveyance."

Comment b to that section indicates that the trustee is liable even though he makes a reasonable mistake of law or fact. In this case, the trustee had the duty to secure Schug's beneficial interest and to transfer 1,000 shares to Schug when those shares were removed from escrow. He breached that duty by transferring ownership to Morris without proper assignment or consent of Schug. Since the district court properly found such a breach of

duty and conversion of the stock, its judgment on this point is also affirmed.

■ Minnesota has adopted the so-called New York rule under which the proper measure of damages for the conversion of stock is the highest value which the stock reaches within a reasonable time after the owner has knowledge of the conversion. Hornblower & Weeks-Hemphill Noyes v. Lazere, 301 Minn. 462, 473, 222 N. W. 2d 799, 806 (1974). Defendant's objection to the district court's award of $14,500 for conversion of the 1,000 shares does not relate to the measure of damages, but to the date chosen as the time Schug learned of the conversion. Defendant argues that Schug knew the shares were converted when the executor of the Morris estate reported that he could not find them. To the contrary, the district court apparently found that Schug did not know of the conversion until defendant informed him that the shares had been transferred to Morris. There is substantial evidence to support this finding, and this court will not disturb it. Schug, according to that evidence, had no idea of what had happened to his 1,000 shares until defendant informed him of the conversion. Before that time, Schug was searching diligently for the shares, but had no reason to believe they had been wrongfully transferred to Morris.

However, we note that the trial court's finding on the issue of damages for the 1,000 shares of stock is somewhat ambiguous. In Finding of Fact No. XXIV, the court stated:

"The damages suffered by Plaintiff is the highest value which a share of Mustang Investment Corporation stock reached within a reasonable time period after Plaintiff demanded and Defendant failed to deliver the One Thousand (1,000) shares * * *."

It appears that the trial court's date (date of demand and failure to deliver) is the same date on which Schug learned of the conversion—the date required under Hornblower & Weeks-Hemphill Noyes v. Lazere, supra. That date is August 24, 1972, when defendant informed Schug in a telephone conversation that he

had canceled Schug's trust certificate and refused to deliver Schug's 1,000 shares. However, in view of the ambiguity in the finding, and defendant's challenge of it in this court, we prefer to remand to allow the trial court to redraft it in conformity with the rule set forth in Hornblower.

For the reasons stated above, we affirm the decision of the trial court on the three issues discussed and remand for redrafting of Finding of Fact No. XXIV.

Affirmed in part and remanded.