[Nos. 8807–6–I; 8942–1–I. Division One. February 22, 1983.]

KENNETH BROUGHAM, ET AL, *Appellants,* v. MELISSA M. SWARVA, ET AL, *Respondents.*

*J. Richard Quirk* and *Douglas Cook,* for appellants.

*Russell Austin, Jr.,* and *Ronald Neubauer,* for respondents.

CALLOW, J.—Kenneth Brougham and Marlene Brougham, husband and wife, appeal from a judgment rendered after a nonjury trial, which awarded Melissa M. Swarva $861,500 in damages for the conversion by the Broughams of certain Canadian coins. Four issues are presented:

1. Is a partner entitled to an award of attorney's fees when the partner brings an accounting action against his former partners based on an alleged breach of fiduciary duty?

2. Is Swarva's counterclaim barred by the 3–year limitation period of RCW 4.16.080(2)?

3. What is the appropriate measure of damages for the intentional, willful, malicious, and wrongful conversion of personal property?

4. Was evidence regarding the illegal nature of the relationship existing between the parties properly excluded by the trial court as irrelevant?

George Swarva died on May 12, 1972, leaving a community estate worth approximately $1 million to Melissa Swarva, his widow. His estate included silver Canadian coins which had a face value of $80,000. Within weeks of Mr. Swarva's death Kenneth Brougham persuaded Mrs. Swarva to allow him to pledge, as collateral, $30,000 of her Canadian silver coin for the business dealings of himself and his wife, Marlene Brougham. The Broughams also persuaded Mrs. Swarva to deposit, in the name of the Broughams, the remaining $50,000 of her Canadian silver coin into safety deposit boxes and/or vaults of several banks in the greater Seattle area. Mrs. Swarva, however, believed she retained all the keys to each of the boxes and/or vaults.

On October 19, 1973, Mrs. Swarva, Mr. Brougham, and Delton J. Bonds, a Seattle real estate salesman and broker, formed May–Tac Enterprises, a partnership. The partnership agreement gave each partner equal rights and obligations and provided that partnership decisions would be made by majority vote. The new partnership simultaneously acquired a 10–year option to purchase, at $1.15 per square foot, 4.65 acres of real property owned by Mrs. Swarva.

On August 1, 1977, Mr. Brougham, Mrs. Swarva, and Mr. Bonds met at the offices of John W. Flynn, a licensed attorney, for the purpose of dissolving May–Tac Enterprises. Mr. Flynn had previously handled the probate of Mr. Swarva's estate and also represented Mr. Brougham in an investigation by the Internal Revenue Service. Mr. Flynn was not acting for the partnership or for any of the individual partners but was only allowing the parties to use his office and was taking notes of the meeting at their request. The partners unanimously agreed to dissolve the partnership. Also, Mr. Bonds and Mrs. Swarva, over Mr. Brougham's objection, voted to transfer back to Mrs. Swarva the 4.65 acres of real property, thereby rescinding the option agreement. The fair market value of the property on that date had increased to $2.05 per square foot. Subsequently, in late 1977 or early 1978, Mrs. Swarva, Mr.

Bonds, and Mr. Flynn formed another partnership to develop the 4.65 acres of real property which Mrs. Swarva owned.

Mr. Brougham then initiated an action seeking an accounting of the May–Tac partnership and an order awarding to him his share of the assets of the dissolved partnership. Mrs. Swarva filed a counterclaim for the recovery of her Canadian silver coin on July 10, 1978.

In September of 1978, Mrs. Swarva learned that the Broughams had wrongfully converted the $30,000 in silver coin, which she had allowed to be pledged as collateral, to their own use. Subsequently, Mrs. Swarva discovered that the Broughams had also removed and sold the $50,000 in silver coin which had been deposited in various safety deposit boxes and/or vaults. This theft was concealed by the Broughams from the time of the theft up to and during the trial which is the cause of this appeal.

A nonjury trial was conducted and on April 14, 1980, judgment was entered against Mr. Bonds and Mrs. Swarva, jointly and severally, in the amount of $60,766. The court also entered judgment in the amount of $861,500 against the Broughams in favor of Mrs. Swarva on the basis of her counterclaim. Other judgments entered by the trial court have not been appealed from. Thereafter, on May 27, 1980, pursuant to a post–trial motion, the trial court permitted the $60,766 judgment awarded to the Broughams to be off-set and satisfied against the larger judgment of $861,500 obtained by Mrs. Swarva.

The first issue is whether a partner is entitled to an award of attorney's fees when the partner brings an accounting action against his former partners based on an alleged breach of fiduciary duty.

The trial court found that Swarva and Bonds could not transfer the 4.65 acres of real property, a partnership asset, back to Swarva, thereby rescinding the option agreement, to the detriment of Brougham. Hence, Brougham was granted a judgment against Swarva and Bonds, jointly and severally, in the amount of $60,766. This was one–third of

$182,299 which represented the increase in value of the property while it was an asset of the May–Tac partnership. However, the trial court refused to grant attorney's fees, and Brougham alleges this was error.

■■ Attorney's fees will not be awarded in the absence of a contract, statute, or recognized basis in equity. *Seattle Sch. Dist. 1 v. State,* 90 Wn.2d 476, 540, 585 P.2d 71 (1978); *Crane Towing, Inc. v. Gorton,* 89 Wn.2d 161, 176, 570 P.2d 428, 97 A.L.R.3d 482 (1977). Here, no contract or statute exists which authorizes an award of attorney's fees. Brougham, however, argues that *Hsu Ying Li v. Tang,* 87 Wn.2d 796, 557 P.2d 342 (1976) authorizes attorney's fees whenever a partner is forced to bring an accounting action against his former partners due to a breach of fiduciary duty.

In the *Tang* case, one partner sued another to compel him to perform his fiduciary duties and to preserve the partnership property. The wrong–doing partner had breached his fiduciary duty by not keeping the partnership books, by not providing an accounting as requested, and by commingling the partnership funds with his personal funds. The court found that the wrong–doing partner's negligent breach of his fiduciary duty to the partnership amounted to constructive fraud and, therefore, the innocent partner was entitled to attorney's fees since the lawsuit had preserved the partnership assets and prevented further commingling of the partnership assets with the separate assets of the wrong–doing partner.

The award in *Tang* appears to have been based on constructive fraud; however, subsequent case law has interpreted *Tang* to have granted attorney's fees on the basis of the "common benefit/common fund theory."

> [*Hsu Ying Li v. Tang, supra*]'s award of attorneys' fees was only superficially based on proof of constructive fraud (a stronger claim than that made here). The actual award stemmed from the prevailing party's having preserved partnership assets, *i.e.,* an identifiable fund.

*Asarco Inc. v. Air Quality Coalition,* 92 Wn.2d 685, 716,

601 P.2d 501 (1979). *See Department of Labor & Indus. v. Dillon,* 28 Wn. App. 853, 858, 626 P.2d 1004 (1981). The "common benefit/common fund theory" requires the litigation to both benefit others as well as the litigant and also to protect, preserve, or create a common fund. *Seattle Sch. Dist. 1,* at 542. The Broughams cannot recover attorney's fees on the "common benefit/common fund" theory. The litigation did not protect, preserve or create a common fund which contributed to the common benefit of anyone other than themselves.

Furthermore, although the trial court found that Mrs. Swarva and Mr. Bonds could not transfer the option, a partnership asset, to the detriment of any partner, it also found that the transfer of the property back to Mrs. Swarva was not done with the intent to defraud the Broughams, nor with the knowledge or anticipation of development in the near future. Rather, the court found that the dissolution of the partnership was in compliance with state law and the partnership agreement.[1] The court also found that the later development of the 4.65 acres by the new partnership was proper and did not violate the fiduciary duty of any of the three defendants to the Broughams. Thus, there being no proof of constructive fraud such as supported the

---

[1]The partnership agreement stated in part:

"V. PROFIT AND LOSSES: The net profits or losses of the partnership shall be divided equally between the partners.

". . .

"VI. MANAGEMENT: Each of the partners shall have an equal voice in the management and conduct of the partnership's business. All decisions of the partnership shall require at least two–thirds affirmative vote of the partnership.

". . .

"IX. VOLUNTARY TERMINATION: The partnership may be dissolved at any time by agreement of the partners, in which event the partners shall proceed with reasonable promptness to liquidate the business of the partnership. The assets of the partnership shall be used and distributed in the following order:

"a. To pay or provide for the payment of all partnership liabilities and liquidating expenses and obligations;

"b. To repay any loans, if any, from either partner to the partnership;

"c. To discharge the balance of the capital accounts of the partners mutually."

award of attorney's fees in *Tang,* the trial court properly denied the Broughams attorney's fees.

The second issue is whether Swarva's counterclaim is barred by the 3–year limitation period of RCW 4.16.080(2).

The parties agree that the applicable statute of limitations is RCW 4.16.080 which states:

Actions limited to three years. Within three years:

. . .

(2) An action for taking, detaining, or injuring personal property, including an action for the specific recovery thereof, or for any other injury to the person or rights of another not hereinafter enumerated;

The parties further agree that since the Broughams were constructive trustees of Swarva's silver coins, the statute of limitations did not begin to run until the Broughams' conduct put her on notice that the trust had been repudiated. *In re Estate of Barr,* 76 Wn.2d 59, 62, 455 P.2d 585 (1969); *see O'Steen v. Estate of Wineberg,* 30 Wn. App. 923, 640 P.2d 28 (1982) (holding that an express trust is not subject to the statute of limitations until it is terminated or openly repudiated by the trustee and that a repudiation, to be effective, must be communicated to the beneficiary).

■■ Swarva's counterclaim was timely filed. Pleading the statute of limitations is an affirmative defense and each of its elements must be proved by the party asserting it. *Haslund v. Seattle,* 86 Wn.2d 607, 619, 547 P.2d 1221 (1976); *Fulle v. Boulevard Excavating, Inc.,* 20 Wn. App. 741, 743, 582 P.2d 566 (1978). The Broughams did not meet this burden of proof. Swarva filed her counterclaim on July 10, 1978, and the record is that Swarva did not have notice prior to July 10, 1975, that Brougham had taken the silver coins. In fact the trial court found that Mrs. Swarva did not discover the conversion of the $30,000 in silver Canadian coin until September of 1978. As to the $50,000 in silver Canadian coin, the court found "[t]he theft was concealed by the lies of the [Broughams] from the time of their theft up to and during the trial itself." This finding is supported by substantial evidence and will not be disturbed on

appeal. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

Brougham, however, contends that there was notice to Swarva's attorney prior to July of 1975 that Brougham had removed the coins from Swarva's safety deposit box which must be imputed to Swarva. Brougham asserts that Swarva's counterclaim, filed July 10, 1978, therefore was not timely. Even assuming that notice to Swarva's attorney might be deemed imputed notice to Swarva, the trial court made no finding that Swarva's attorney had notice of the theft prior to July 1975. "The absence of a finding on a material issue is presumptively a negative finding entered against the party bearing the burden of proof on that issue." *Batten v. Abrams,* 28 Wn. App. 737, 744, 626 P.2d 984 (1981). Presumably, then, even Swarva's attorney did not have notice of the removal of the coins prior to July of 1975. Furthermore, the record is devoid of any evidence which would support Brougham's contention. Thus, the trial court did not err by determining that Swarva's counterclaim was not barred by the 3–year statute of limitation period of RCW 4.16.080(2).

The third issue concerns the appropriate measure of damages for the intentional, willful, malicious, and wrongful conversion of personal property.

The trial court found that:

As to said $30,000 in silver Canadian coins, Mrs. Swarva discovered in September of 1978 that the [Broughams] intentionally, willfully, wrongfully, maliciously, deliberately, and without the knowledge or consent of Mrs. Swarva, converted the silver to their own use. . . .

As to the $50,000 in silver Canadian coins, the coins were stolen from Mrs. Swarva by the [Broughams]. The theft was concealed by the lies of the [Broughams] from the time of their theft up to and during the trial itself.

Mr. Brougham does not deny that he intentionally, willfully, and wrongfully converted $80,000, in face amount, of silver Canadian coins from Mrs. Swarva. Hence, since this was a willful conversion and the converted goods were of fluctuating value the measure of damages is "the highest

market value of the property within a reasonable time after the conversion". *Merchants Leasing Co. v. Clark,* 14 Wn. App. 317, 322, 540 P.2d 922 (1975); *see Grays Harbor Cy. v. Bay City Lumber Co.,* 47 Wn.2d 879, 883, 289 P.2d 975 (1955); *Glaspey v. Prelusky,* 36 Wn.2d 592, 595, 219 P.2d 585 (1950).

Brougham contends that in cases of willful conversion, a "reasonable time" is limited to the highest fair market value of the property during the period between the actual conversion and the filing of the complaint by the party suffering the loss. This contention is supported by *Glaspey v. Prelusky, supra* at 595:

> [For willful conversion] the measure of damages is the highest market value of the property within a reasonable time after the conversion, or, as sometimes stated, the highest price shown between the time of the conversion and the institution of the suit.

*See also Merchants Leasing Co. v. Clark, supra* at 322. We decline to adopt this measure of damages in view of the circumstances of this case.

Here, the valuation of the silver Canadian coin presents similar considerations to those present when evaluating corporate stock. Prior cases have applied the standard measure of damages for conversion of stock, *i.e.,* the fair market value at the date of conversion, *Rogich v. Dressel,* 45 Wn.2d 829, 278 P.2d 367 (1954), *Elliott v. Seattle Co.,* 178 Wash. 94, 34 P.2d 442 (1934), *Hetrick v. Smith,* 67 Wash. 664, 122 P. 363 (1912), but recent decisions in other jurisdictions have held otherwise.

Some decisions have awarded damages based on the highest value reached by the stock or personal property between the time of conversion and trial. *Ott v. Fox,* 362 So. 2d 836 (Ala. 1978) (stock conversion); *Chattanooga Discount Corp. v. West,* 219 F. Supp. 140, 146 (N.D. Ala. 1963) (security conversion); *Royal–Liverpool Ins. Group v. McCarthy,* 229 S.C. 72, 91 S.E.2d 881 (1956) (automobile conversion). Other jurisdictions have awarded the highest price between the date of conversion and a reasonable time

after learning thereof. *Fletcher v. Cobuzzi,* 510 F. Supp. 263 (W.D. Pa. 1981) (stock conversion); *Reed v. White, Weld & Co.,* 571 S.W.2d 395 (Tex. Civ. App. 1978) (conversion of securities). Still other courts have applied the "New York rule" which awards the highest price within a reasonable time after learning of the conversion disregarding the period between conversion and learning thereof. *Klein v. Newburger, Loeb & Co.,* 151 So. 2d 879 (Fla. Dist. Ct. App. 1963) (stock conversion); *Schug v. Michael,* 310 Minn. 22, 245 N.W.2d 587 (1976) (stock conversion); *Hoffman v. Dorner,* 86 A.D.2d 651, 447 N.Y.S.2d 20 (1982) (conversion of gold and silver coins). Finally, some courts have awarded damages based on their highest value between the time of conversion and judgment. *Kaplan v. Cavicchia,* 107 N.J. Super. 201, 257 A.2d 739 (1969) (conversion of securities); *U.S. Cities Corp. v. Sautbine,* 126 Okla. 172, 259 P. 253 (1927) (stock conversion).

The rationale underlying these different measures of damages is that:

> While the normal rule that value is to be determined as of the date of conversion appears to do substantial justice in cases where the converted goods are of a more or less stable value . . . it is less satisfactory where, as is the case with corporate stock, value is subject to sharp fluctuations and the owner frequently does not learn of the conversion for a substantial time during which the value may have shifted a number of times.

(Footnote omitted.) Annot., *Comment Note.—Measure of Damages for Conversion of Corporate Stock or Certificate,* 31 A.L.R.3d 1286, 1305 (1970).

Following this rationale, we hold that where personal property which has a sharply fluctuating value is willfully converted and such conversion is fraudulently concealed by the converter, the measure of damages is the highest value of the property wrongfully and knowingly converted between the time of conversion and a reasonable time after the victim learns of such conversion. Such a rule protects the victim who has invested in property for speculative

purposes when the market either rises or falls subsequent to the conversion. *See* Annot., 31 A.L.R.3d, *supra.* The innocent victim should not suffer a loss because of the wrongful taking and withholding of his property. Neither should he be granted the windfall of complete umbrella protection by being awarded the highest possible valuation of the property from the time of its taking to the entry of judgment or its return.

Here, Brougham contends that the trial court valued the silver coins as of the dates Brougham admitted that he had willfully taken the coins, *i.e.,* on the dates Swarva discovered the fact of conversion. Hence, we need only consider whether substantial evidence supports the trial court's findings as to the amount of damages. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

The trial court found:

As to this $30,000 in silver Canadian coins, Mrs. Swarva sustained damages in the amount of $61,500 . . .

. . . Mrs. Swarva's damages are, as to this $50,000 in silver coins, $800,000 . . .

Brougham admitted in a deposition conducted in 1978 that he had converted the $30,000 in silver Canadian coins. Expert testimony was introduced at trial which indicated that on July 28, 1978, the $30,000, in face amount of silver Canadian coin, would be worth from $61,500 to $62,700. Since the trial court's finding as to the value of the $30,000 in silver Canadian coin is supported by substantial evidence, it will not be disturbed on appeal. *Thorndike v. Hesperian Orchards, Inc., supra.*

As to the $50,000 in silver Canadian coin, Brougham did not admit until March 20, 1980, during the trial, that he had also converted these coins. Expert testimony established the value of the silver coins as follows:

February 23, 1979: $225,000–227,000
Early February of 1980: $950,000
February 15, 1980: $750,000
March 20, 1980: $500,000

The trial court assessed damages at $800,000. Since the

finding of the trial court as to the amount of damages is within the range of relevant testimony, it will not be disturbed on appeal. *Ferrell v. Cronrath,* 67 Wn.2d 642, 645, 409 P.2d 472 (1965); *Steele v. Queen City Broadcasting Co.,* 54 Wn.2d 402, 341 P.2d 499 (1959); *Kenney v. Abraham,* 199 Wash. 167, 175, 90 P.2d 713 (1939); *see Highlands Plaza, Inc. v. Viking Inv. Corp.,* 2 Wn. App. 192, 203–04, 467 P.2d 378 (1970).

The final issue is whether evidence regarding the illegal nature of the relationship existing between the parties was properly excluded by the trial court as irrelevant.

Brougham contends testimony or evidence regarding the possibly illegal nature of the relationship of the parties to the extent that the silver coins were originally placed in Brougham's name to defraud inheritance tax authorities was relevant since the courts will not aid any of the parties involved in an illegal transaction in actions against the other. Hence, he argues that the trial court improperly excluded such evidence.

Courts will not enforce an illegal contract and will leave the parties to such a contract where it finds them. *State v. Northwest Magnesite Co.,* 28 Wn.2d 1, 26, 182 P.2d 643 (1947); *see Golberg v. Sanglier,* 96 Wn.2d 874, 879, 639 P.2d 1347 (1982). Similarly, our courts will not enforce a contract which grows immediately out of and is connected with an illegal act. *Waring v. Lobdell,* 63 Wn.2d 532, 533, 387 P.2d 979 (1964). Accordingly, a plaintiff could not recover money which he alleged was owed to him pursuant to an illegal contract to conduct a poker game on the defendant's premises. *Cooper v. Baer,* 59 Wn.2d 763, 370 P.2d 871 (1962). Nor could a plaintiff recover money which he delivered to another upon the latter's illegal promise either to get him a beer license or return the money. *Sinnar v. LeRoy,* 44 Wn.2d 728, 270 P.2d 800 (1954).

The "doctrine of severability," however, is a limited exception to the rule that courts will not enforce an illegal contract. That doctrine states:

[I]f the promise sued upon is related to an illegal transaction, but is not illegal in and of itself, recovery should not be denied, notwithstanding the related illegal transaction, if the aid of the illegal transaction is not relied upon or required, or if the promise sued upon is remote from or collateral to the illegal transaction, or is supported by independent consideration.

*Sherwood & Roberts–Yakima, Inc. v. Cohan,* 2 Wn. App. 703, 710, 469 P.2d 574 (1970). Furthermore, "an independent and subsequent agreement for the distribution of the profits of an illegal transaction will be enforced if made after the illegal contract or transaction has been fully executed." *Golberg v. Sanglier,* 27 Wn. App. 179, 197, 616 P.2d 1239 (1980), *rev'd,* 96 Wn.2d 874, 639 P.2d 1347 (1982).

*Melton v. United Retail Merchants,* 24 Wn.2d 145, 162, 163 P.2d 619 (1945) stated:

[A] plaintiff may recover a sum of money from a defendant who has acknowledged that it belongs to plaintiff even if that sum be plaintiff's share of the profits of some illegal business or transaction in which both were engaged and equally culpable. This is so because the plaintiff, in such a situation, need prove nothing illegal, but has only to prove that the defendant has acknowledged the sum sued for to belong to him, and the court will then, as a matter of law, imply the promise to pay.

*See also Central Labor Coun. v. Young,* 136 Wash. 550, 240 P. 919 (1925); *McDonald v. Lund,* 13 Wash. 412, 43 P. 348 (1896). Thus, so long as "'a party can show a right of recovery without relying on the illegal contract and without having the court sanction the same he may recover in any appropriate action.'" (Italics omitted.) *Melton,* at 162 (quoting *Teich v. Chicago,* 298 Ill. 498, 501, 131 N.E. 605, 606 (1921)).

Here, Swarva agreed to deposit, in various safety deposit boxes, $50,000 of her silver Canadian coin in the name of the Broughams. Hence, any alleged illegal relationship existing between Brougham and Swarva had to inhere in their agreement to transfer the coins in order to bar Swarva's recovery. If such illegality was not part of the

transfer itself, then the transfer was not illegal and evidence concerning an illegal relationship between Swarva and Brougham was properly excluded as irrelevant.

 Brougham made the following offer of proof regarding illegality:

> I think I will be able to show that there was a lot of money. That the relationship between these people prior to the death of Mr. Swarva wouldn't justify a gift in the amount of what the apparent worth of—I think we are really talking about $60,000. That the timing of the events, the way the transfers were made, the Swarva estate, the way it was handled, the way it was closed, the penalties paid for late closing, strongly suggest that there was an overall scheme to hide massive amounts of the Swarva estate from tax authorities.

This was speculative and an insufficient offer of proof to permit admission of evidence regarding "illegality." "An offer of proof must be sufficiently definite and comprehensive fairly to advise the trial court whether or not the proposed evidence is admissible." *Sutton v. Mathews,* 41 Wn.2d 64, 67, 247 P.2d 556 (1952); *see State v. Williams,* 12 Wn.2d 16, 19, 120 P.2d 502 (1941).

> The offer must be more than mere argument or colloquy of counsel, *Swanson v. Solomon,* 50 Wn.2d 825, 828–29, 314 P.2d 655 (1957), and counsel must make clear what he offers in his offer of proof. *Cochran v. Harrison Mem. Hosp.,* 42 Wn.2d 264, 272, 254 P.2d 752 (1953). The offer of proof must be sufficient to advise the appellate court whether the party was prejudiced by the exclusion of the evidence. *Donald W. Lyle, Inc. v. Heidner & Co.,* 45 Wn.2d 806, 814, 278 P.2d 650 (1954).

*State v. Vargas,* 25 Wn. App. 809, 817, 610 P.2d 1 (1980). *See Mad River Orchard Co. v. Krack Corp.,* 89 Wn.2d 535, 537, 573 P.2d 796 (1978).

The offer of proof submitted by Brougham was so general and indefinite that its rejection was not erroneous. Brougham did not make a specific and comprehensive showing that the relevant transaction itself was illegal. Nor did he show that any illegal relationship of Brougham and Swarva inhered in the transfer of the coins. Hence, the trial

court properly concluded that any evidence which might have shown that the coins were deposited in the Broughams' name in order to defraud tax inheritance authorities was irrelevant since such evidence could not have affected Swarva's recovery.

The judgment is affirmed.

DURHAM, A.C.J., and SCHOLFIELD, J., concur.