**FEDERAL SAVINGS & LOAN INSURANCE CORPORATION**

v.

**John A. MMAHAT, et al.**

Civ. A. Nos. 86–5160, 86–5557 to 86–5560, 86–5562, 87–1630,* 87–4755, 87–3770, 87–4268, 87–1866, 87–3807, 87–5124, 87–5245, 87–5247, 88–1393, 88–2575, 88–2576, 88–2208, 88–2211 and 89–46.

United States District Court, E.D. Louisiana, Section A.

Dec. 28, 1988.

Order and Reasons Regarding Policy Exclusions Dec. 28, 1988.

Order and Reasons Feb. 8, 1989.

---

* This Order & Reasons pertains to 87–1630.

Stone, Pigman, Walther, Wittmann & Hutchinson, Phillip A. Wittmann, James C. Gulotta, Jr., Trial Atty., Sarah S. Vance, Charles L. Stern, Jr., New Orleans, La., Squire, Sanders & Dempsey, James P. Murphy, Paul E. Guermann, Harry Quillian, General Counsel, Ralph W. Christy, Deputy General Counsel, William K. Black, Sr., Associate General Counsel, Rodney L. Solenberger, Trial Atty., Federal Home Loan Bank Bd., Washington, D.C., for plaintiffs.

Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, C. Alan Hennesy, Trial Atty., D. Michael Dendy, L. Eades Hogue, Trial Atty., New Orleans, La., for Elva N. Winters, James B. Cobb.

Hoppe & Schaefer, Henry B. Hoppe, Jr., Trial Atty., E. Gordon Schaefer, Jr., Metairie, La., for William F. Lucas.

Hebert, Mouledoux & Bland, Maurice C. Hebert, Jr., John F. Young, Jr., New Orleans, La., Morrison & Biri, Ronald W. Morrison, Metairie, La., for Paul E. Riviere.

Morgan & Williams, Ltd., L. Linton Morgan, New Orleans, La., for Albert Eason.

Frank G. DeSalvo, New Orleans, La., for David Resha.

Hailey, McNamara, Hall, Larmann & Papale, Richard T. Simmons, Jr., Metairie, La., for John A. Mmahat, Mmahat, Duffy, Opotowsky & Walker.

Gauthier, Murphy, Sherman, McCabe and Chehardy, Richard J. Tomeny, Jr., Metairie, La., for Rodney P. Jordy.

Jones, Walker, Waechter, Poitevaent, Carrere & Denegre, R. Patrick Vance, William J. Gibbons, Jr., New Orleans, La., for David Keith Gatto.

Bronfin, Heller, Steinberg & Berins, Robert A. Kutcher, New Orleans, La., for John Falgoust.

Joseph C. Mmahat, Metairie, La., pro se.

Phelps, Dunbar, Marks, Claverie & Sims, Eugene R. Preaus, Mark B. Meyers, New Orleans, La., for Fidelity & Deposit Co. of Maryland.

McGlinchey, Stafford, Mintz, Cellini, & Lang, Dermot S. McGlinchey, J. Forrest Hinton, Trial Atty., Stephen W. Rider, New Orleans, La., for Mt. Hawley Ins. Co.

Galloway, Johnson, Tompkins & Burr, J. Michael Johnson, Trial Atty., John E. Galloway, Marianne S. Pensa, New Orleans, La., for American Cas. Co. of Reading, Pa.

McGlinchey, Stafford, Mintz, Cellini & Lang, Henry Wolbrette, III, Arthur H. Leith, New Orleans, La., for Blitche Architects.

Hurley and Hoffmann, Anita M. Warner, New Orleans, La., for Gulf Buildings.

Warren A. Goldstein, New Orleans, La., for Richard L. Landry, III.

Richard L. Landry, III, Covington, La., pro se.

Wright, Robinson, McCammon, Osthimer & Tatum, Murray H. Wright, Edward E. Nicholas, III, Richmond, Va., Wright, Robinson, McCammon & Tatum, Edward E. Nicholas, Richmond, Va., for American Cas.

Hulse, Nelson & Wanek, John A. Stewart, Jr., Trial Atty., Regel L. Bisso, Denise M. D'Aunoy, Karen L. Sonnier, New Orleans, La., for Continental Cas., Robert L. Marrero, John T. Pender.

Muller & Lehman, Robert C. Lehman, Richard L. Muller, Mandeville, La., for Ronald E. Kilcrease & Associates, Architects/Planners, APC, Ronald E. Kilcrease.

Blue, Williams & Buckley, Donald A. Hammett, Trial Atty., John V. Baus, Jr., Metairie, La., for New England Reinsurance Co.

McCloskey, Langenstein & Stoller, Edward J. McCloskey, Fritz M. Stoller, New Orleans, La., for William C. Hartwell.

Hebert, Mouledoux & Bland, Georges M. Legrand, New Orleans, La., for Algoth B. Paulson.

Shushan, Meyer, Jackson, McPherson & Herzog, Donald Meyer, New Orleans, La., for Delery App., Frank Delery.

Ted A. Price, Roy L. Price, New Orleans, La., for Commonwealth Land Title Ins.

Larry C. Pieno, Marrero, La., for Frank Fradella Appraisal Services, Frank Fradella.

William F. Lucas, Harahan, La., pro se.

CHARLES SCHWARTZ, Jr., District Judge.

## ORDER & REASONS REGARDING DISCHARGEABILITY

This litigation has been brought by FSLIC as receiver of Gulf Federal Savings Bank to recover damages incurred by Gulf as a result of alleged wrongful acts by Gulf's former officers, directors and lawyers,[1] including legal malpractice claims against Gulf's former lawyers, the firm of Mmahat & Duffy and John Mmahat individually. These claims arose out of alleged malpractice and breach of fiduciary by Mmahat and his firm in respect of their advice regarding federal lending limits set forth in the loans to one borrower regulation. The jury returned a verdict in response to special interrogatories in favor of FSLIC and against both defendants in the amount of $35 million, and the Court entered a judgment based upon the verdict.

Pursuant to the stipulation entered into by the parties on December 14, 1988, the Court took under submission certain issues, among which is the question whether the jury's award in favor of plaintiff FSLIC and against John A. Mmahat in the amount of $35 million is dischargeable in bankruptcy proceedings filed by defendant Mmahat.[2] The Court was also authorized by stipulation to make such findings of fact and conclusions of law as are necessary to resolve these issues, based upon the evidence in the record and the jury's findings and without taking any further evidence.[3]

Accordingly, having considered the evidence, the parties' memoranda and the applicable law, the Court rules as follows. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are so adopted.

### Findings of Fact

The original complaint in Civil Action 86–5160 was filed on November 21, 1986. On January 30, 1987, John A. Mmahat filed a voluntary petition for bankruptcy, assigned Bankruptcy Court E.D.La. No. 87–00447. After filing a proof of claim in Mmahat's bankruptcy, FSLIC filed, on April 9, 1987, a petition to determine the dischargeability of the claims made by FSLIC against Mmahat in the complaint initiating this action. Also on April 9, 1987, FSLIC moved for relief from the automatic stay and moved to withdraw the reference of its complaint to determine dischargeability from Bankruptcy Court to District Court. At that time, the motion to withdraw the reference and the petition to determine dischargeability were assigned District Court Civil Action Number 87–1630. On May 27, 1987, the stay was lifted and the reference of the complaint to determine dischargeability

1. FSLIC's claims against the officers, directors and their insurers were settled prior to trial.

2. The Court also took under submission certain issues of insurance coverage, which were addressed in separately issued Orders & Reasons.

3. As a result of this stipulation, the jury was dismissed from further participation in this cause of action.

withdrawn to District Court. On June 3, 1987, FSLIC's complaint to determine dischargeability (Civil Action No. 87–1630) was consolidated with Civil Action No. 86–5160.

Upon trial of the main demand in Civil Action No. 86–5160, the jury found in response to special interrogatories that an attorney-client relationship existed between Mmahat and Gulf with respect to the loans to one borrower regulation. The jury also found that Mmahat violated his fiduciary responsibility to Gulf in connection with the loans to one borrower regulation. The Court concurs in these findings: It is patently clear from the record that the jury's findings were correct almost to the point of the Court directing a verdict in FSLIC's favor with respect to these questions.

The record is also clear that Mmahat's violations of his fiduciary responsibility to Gulf with respect to the loans to one borrower regulation continued during the period from 1982 to the end of 1984. These breaches of fiduciary duty were motivated by Mmahat's desire to continue his control over Gulf and the enormous fees which he and his law firm were able to reap as a result of his defalcation.[4]

### Conclusions of Law

11 U.S.C. § 523(a) provides in pertinent part:

A discharge under section 727, 1141, 1228(a), 1128(b), or 1328(b) of this title does not discharge an individual from any debt— ...

(4) for fraud or defalcation while acting in a fiduciary capacity.

The attorney-client relationship gives rise to a fiduciary relationship. See Plaquemines Parish Comm'n Council v. Delta Dev. Co., 502 So.2d 1034, 1040 (La.1987).

■ In light of the concurrent findings of the jury and this Court that an attorney-client and fiduciary relationship existed, Mmahat's wrongful conduct falls within 11 U.S.C. § 523(a)(4). Where a defalcation occurs in the context of a fiduciary relationship, a debt resulting from the defalcation is not dischargeable in bankruptcy. See Carey Lumber Co. v. Bell, 615 F.2d 370, 375 (5th Cir.1980); In re Codias, 78 B.R. 344, 346 (S.D.Fla.1987); Janikowski v. Janikowski, 60 B.R. 784, 789 (N.D.Ill.1986); In re Gelman, 47 B.R. 735 (S.D.Fla.1985).

Accordingly, the Court concludes that the judgment rendered herein against John A. Mmahat in Civil Action 86–5160 for malpractice in violation of the loans to one borrower regulation is nondischargeable in bankruptcy. The Clerk of Court is hereby directed to close Civil Action 87–1630 and the matter is hereby remanded to the Bankruptcy Court for further proceedings consistent with this Order & Reasons, including, but not limited to, the entry of an Order with respect to the nondischargeability of the debt at issue in Civil Action 86–5160 with respect to any final adjudication of the John A. Mmahat bankrupt estate.

### ORDER & REASONS REGARDING POLICY EXCLUSIONS

This litigation has been brought by FSLIC as receiver of Gulf Federal Savings Bank to recover damages incurred by Gulf as a result of alleged wrongful acts by Gulf's former officers, directors and lawyers. FSLIC's claims against the officers, directors and their insurers were settled prior to trial. Certain of FSLIC's legal malpractice claims against Gulf's former lawyers, the firm of Mmahat & Duffy and John Mmahat individually, proceeded to trial. These claims arose out of alleged malpractice and breach of fiduciary by Mmahat and his firm in respect of their advice regarding federal lending limits set forth in the loans to one borrower regulation. The jury returned a verdict in response to special interrogatories in favor of FSLIC and against both defendants in the amount of $35 million.

By agreement of the parties, entered on the record at the close of defendants' case and prior to the Court's instructions to the jury and further elaborated after the entry

---

**4.** Proportionately, the law firm of Mmahat & Duffy had little other business than Gulf, and Mmahat personally obtained, by far, the greatest proportion of the profits of the law firm.

of the jury's verdict, the Court took under submission certain issues relating to insurance coverage. Among the issues submitted to the Court for decision is the effect of certain dishonesty exclusions in the policies issued by defendants New England Insurance Company[1] and American Casualty Co.[2] This Order & Reasons pertains to the dishonesty exclusions and sets forth the Court's legal conclusions and fact findings necessary for a resolution of those coverage issues. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are so adopted.

### Findings of Fact

One of the two policies in question is that of defendant New England Insurance Company, which issued a lawyers professional liability policy to defendant Mmahat & Duffy. Included within the definition of "named insured" under the policy is anyone, such as defendant John Mmahat, who is or becomes an owner, partner or employee of the firm during the policy period.

In light of the jury's findings that malpractice was committed by Mmahat and his law firm, FSLIC seeks recovery from New England under its policy, which claim New England has opposed based in part upon certain exclusions in the policy. The policy provides in pertinent part:

III—EXCLUSIONS

The policy shall not indemnify the Insured for any damages or claim expenses as the result of any claim:

A—that results in a final adjudication that any Insured has committed a dishonest, fraudulent or malicious act, error, omission or personal injury with deliberate purpose and intent. Nothing contained in the foregoing shall exclude coverage to any other Insured who is not so adjudged to have committed any such

act, error, omission or personal injury as described above.

This policy shall then only pay in excess of the deductible and of the full extent of the assets in the firm of any Insured who was so adjudged to have committed any such act, error, omission or personal injury as described above, and any other personal assets of such Insured recovered by the firm shall inure, to the extent of the amount paid by this policy, to the benefit of the Company. However, the Company will provide a defense for any such claims.

(Emphasis added).

At all relevant times, defendant American Casualty provided primary Directors' and Officers' Liability Insurance coverage to Gulf Federal. Notwithstanding the settlement of FSLIC's claims against the Directors and Officers and their insurers, the scope of coverage afforded by American Casualty is again placed at issue by virtue of claims against American Casualty by John Mmahat for the value of his own time allegedly incurred in defense of the claims against him, and by Mmahat and New England for contribution or indemnity for the cost of defending Mmahat at trial. American Casualty opposes these claims on several grounds, one of which is that its policy excludes coverage for the acts at issue in this lawsuit.

The American Casualty policy contains broader exclusionary language and a more limited obligation with regard to defense than does the New England policy. It provides in pertinent part:

3. EXCLUSIONS

(a) Except for Loss for which the Association [Gulf Federal] is required to indemnify the Directors or Officers, or for which the Association has, to the extent permitted by law, indemnified the Directors or Officers, the Insurer shall not be liable to make any pay-

---

1. The Court rejects FSLIC's contention that the coverage issues were not properly raised in the pre-trial order and further conforms the pleadings to the evidence on these issues, because the Court is of the opinion FSLIC had fair notice of the existence of coverage issues.

2. Although certain claims against American Casualty have been settled, all parties concur there remain outstanding claims against American Casualty for Mmahat's costs of defense.

ment for Loss in connection with any claim made against the Directors or Officers:

. . . .

(2) based upon or attributable to their gaining in fact of any personal profit or advantage to which they were not legally entitled;

. . . .

(5) brought about or contributed to by the dishonesty of the Directors or Officers. However, notwithstanding the foregoing, the Directors and Officers shall be protected under the terms of this policy as to any claims upon which suit may be brought against them, by reason of any alleged dishonesty on the part of the Directors or Officers, unless a judgment or other final adjudication thereof adverse to the Directors or Officers shall establish that acts of active and deliberate dishonesty committed by the Directors and Officers with actual dishonest purpose and intent were material to the cause of action so adjudicated.

American Casualty's obligations with regard to Mmahat's defense are subsumed within the definition of "Loss" covered under the policy:

The term "Loss" shall mean any amount which the Directors and Officers are legally obligated to pay or for which the Association [Gulf Federal] is required to indemnify the Directors and Officers, or for which the Association has, to the extent permitted by law, indemnified the Directors and Officers, for a claim or claims made against the Directors and Officers for Wrongful Acts and shall include, but not be limited to, damages, judgments, settlements, costs (exclusive of salaries of officers or employees), and defense of legal actions, claims or proceedings and appeals therefrom. . . .

The term "Wrongful Act" is defined as follows:

The term "Wrongful Act" shall mean any actual or alleged error, misstatement, misleading statement, act or omission, or neglect or breach of duty by the Directors or Officers in the discharge of their duties solely in their capacity as Directors or Officers of the Association, individually or collectively, or any matter claimed against them solely by reason of their being Officers or Directors of the Association.

The American Casualty policy sets forth no obligation to defend nor any other additional obligation to pay costs of defense.

At the request of FSLIC, this Court included among the interrogatories posed to the jury two interrogatories requesting findings (1) whether John Mmahat breached his fiduciary duties as attorney with respect to the loans to one borrower regulation and (2) whether Mmahat & Duffy breached their fiduciary duties as attorneys with respect to the loans to one borrower regulation. The Court deemed these interrogatories appropriate because FSLIC was not content to rest its case on the question whether Mmahat and his firm were guilty of malpractice solely because of his improper advice with respect to the loans to one borrower regulation. Rather, FSLIC included in its argument and evidentiary presentation to the jury the claim that Mmahat and his firm breached their fiduciary duties as lawyers because of actions taken to generate fees.

Upon submission of these questions to the jury, the jury returned affirmative findings in response to both interrogatories, and the Court entered this verdict of record. The Court finds this a final adjudication on the issue of breach of fiduciary duty, supported by evidence clearly establishing that Mmahat closed loans to generate fees for his law firm and that he controlled the board of directors to such an extent that any objection to his actions would have been overridden by him. Mmahat's professed failure to review regulations on federal lending limits and other evidence of his advice to Gulf to ignore federal lending limits are also wholly consistent with the jury's finding that he and his law firm breached their fiduciary duties as attorneys. A breach of fiduciary duty under such circumstances is a dishonest act within the meaning of the policy in question. The Court further finds that Mma-

hat's wrongful acts were deliberate and intentional and not a result of mere mistake or accident. Accordingly, there is no coverage for such acts under the New England policy.

Moreover, because both insureds before this Court were found by the jury to have breached their fiduciary duties and are found by the Court to have therefore been dishonest within the meaning of the policy, the Court finds inapplicable the second paragraph of New England's Exclusion A. In the Court's opinion, the option of proceeding against a law firm's assets first, but then requiring coverage for any additional unpaid amounts of a malpractice claim is applicable only when claim is also made against an insured who is not found to have been dishonest. No such claim or insured exists in this case.

Notwithstanding Mmahat's clear exploitation of his position as director to obtain legal fees, Mmahat argues the jury's finding of breach of fiduciary duty as attorney forecloses a finding that he likewise breached his fiduciary duties as director so as to vitiate coverage under the American Casualty policy. The Court disagrees.

In the first instance, the American Casualty policy contains an exclusion much broader than the dishonesty requirement of the New England policy: The American Casualty policy excludes coverage for any claim based upon or attributable to the insured's gaining personal profit or illegal advantage, and the wrongful acts here at issue and the damages in this case were clearly attributable to Mmahat's desire to generate fees.

Secondly, the Court finds Mmahat's dishonesty as director was an integral part of his dishonesty as a lawyer: He clearly used his position on the board in furtherance of his legal business to an extent beyond any legally acceptable point. This evidence, in conjunction with the jury verdict, leads to the inescapable conclusion that Mmahat attempted to gain personal profit and advantage to which he was not legally entitled,

using his position as attorney and as board member, and that he was dishonest in doing so, within the meaning of the American policy.

Because Mmahat's liability herein arises in the context of his dual role as director and attorney for Gulf, the Court also questions whether the loss at issue arises "solely" from his capacity as director. From the size of its verdict, it is apparent the jury found the full extent of the losses here at issue attributable to the actions of Mmahat and the law firm as attorneys. Thus, the losses here at issue cannot be said to have arisen solely from Mmahat's actions as director.

### Conclusions of Law

■ No dispositive controlling jurisprudence was cited to the Court on the effect of the types of dishonesty exclusions here at issue. However, because the Court concludes that Mmahat committed a dishonest act with deliberate purpose and intent, the Court concludes a denial of coverage under the New England policy and a fortiori under the American policy is appropriate under *Eglin National Bank v. Home Indemnity Co.,* 583 F.2d 1281 (5th Cir.1978) (Court applying Florida law).

In support of Mmahat's claim against American Casualty, Mmahat cited *Starkville Municipal Separate School District v. Continental Cas. Co.,* 772 F.2d 168 (5th Cir.1985), *Okada v. MGIC Indem. Corp.,* 795 F.2d 1450 (9th Cir.1986), and *Little v. MGIC Indem. Corp.,* 649 F.Supp. 1460 (W.D.Penn.1986), *aff'd* 836 F.2d 789 (3d Cir.1987). The Court finds the facts underlying these cases are clearly distinguishable from the circumstances giving rise to the claims here at issue and therefore they do not control the outcome in this case. In *Starkville,* the Court applied Mississippi law in reaching the conclusion based solely upon the policy definition of a "Loss" that costs of successfully defending a claim for punitive damages for wrongful termination were recoverable.[3] In *Okada,* the Ninth

---

**3.** The Court stated, "While punitive damages themselves may be uninsurable for reasons of public policy, that same public policy does not

apply to costs and attorneys' fees incurred in a defense against a plea for punitive damages,

Circuit applied Hawaii law in construing a policy as a duty to defend policy and concluded that costs of defense were recoverable because both covered and uncovered claims were defended against. In *Little*, a Pennsylvania District Court found a duty to reimburse defense costs where both covered and uncovered claims were alleged. By contrast, in the Mmahat litigation, Fifth Circuit precedent and applicable Louisiana law require the conclusion that the American Casualty policy is an indemnity policy rather than one containing the broader duty to defend,[4] and the only claims now at issue are for costs of defending a liability not covered by the policy.

■ In addition to finding the American Casualty policy does not cover the losses here at issue, the Court further rejects Mmahat's individual claim under American's policy for recovery of the value of his own time allegedly spent defending the claims against himself on grounds that such a claim is directly analogous to a claim for his salary as an officer, which is an excludable cost under the definition of the term "Loss". In addition, the Court finds no basis in the policy for awarding such recovery, particularly where Mmahat did not serve as trial attorney and had separate counsel conducting his defense.

The remaining issues of insurance coverage are rendered moot by the above conclusions. However, if American Casualty's request for summary judgment denying coverage rested solely on the regulatory and insured vs. insured exclusions in its policy, the request would have been denied on the basis of legal principles previously set forth by this Court in its Order & Reasons of March 3, 1988.[5] In any event, the Court finds it unnecessary to address American Casualty's arguments regarding insufficient notice at this juncture, but the Court reserves the right to issue any further opinions the Court deems necessary to complete the record for the benefit of any reviewing authorities.

For the foregoing reasons, all claims against New England and American Casualty are hereby dismissed with prejudice.

## ORDER & REASONS

This matter is before the Court on motion of FSLIC for new trial, to alter or amend judgment, and to amend or make additional fact findings. The motion was taken under submission without oral argument. For the following reasons, the motion is hereby DENIED.

The Court perceives FSLIC's arguments as primarily factual, because the Court is of the opinion FSLIC has not cited any legal authority requiring an amendment of the Court's prior conclusions. The Court will nevertheless review below certain of the legal authorities in question.

The Court first must reject outright FSLIC's contentions that defendant John Mmahat was not dishonest within the meaning of the New England malpractice policy so as to vitiate the insurance coverage of which FSLIC seeks to avail itself. As indicated in the Court's prior Order & Reasons Regarding Policy Exclusions, the evidence at trial clearly supports a finding that defendant Mmahat was dishonest within the meaning of the policy.

■ A slightly closer question is presented by FSLIC's contention that as a factual matter Mmahat & Duffy's liability is only vicarious and therefore the firm should not be deemed "dishonest". This Court has carefully considered whether such a result is warranted in this case and concludes the facts and law necessitate the conclusion that the law firm was likewise dishonest within the meaning of the policy. A finding that the law firm was dishonest is particularly appropriate where, as here, the

---

particularly where the defense is successful." 772 F.2d at 170.

**4.** For examples of the type of language giving rise to a duty to defend, see *Jensen v. Snellings,* 841 F.2d 600, 611 (5th Cir.1988) and *Ezell v. Hayes Oilfield Constr. Co.,* 693 F.2d 489, 492–93 & n. 3 (5th Cir.1982), *cert. denied* 464 U.S. 818,

104 S.Ct. 79, 78 L.Ed.2d 90 (1983). For an example of the type of language not giving rise to a duty to defend, see *Cheek v. Williams–McWilliams Co.,* 697 F.2d 649 (5th Cir.1983).

**5.** See Record Doc. No. 34.

partner whose conduct was in question held a controlling interest in the law firm.

The case of *Ashland Oil, Inc. v. Miller Oil Purchasing, Co.,* 678 F.2d 1293, 1317 (5th Cir.1982) (Gordon, J.), cited by FSLIC, supports this conclusion. The Fifth Circuit there held an insured company's acts were intentional and thus were not a covered "occurrence" within the meaning of the policy in question. Thus, this Court finds inapplicable the *Ashland* Court's general statements that intentional acts of a corporate employee should be distinguished from intentional acts of a corporation and should be afforded insurance coverage. The *Ashland* Court described the acts there at issue (illegal waste disposal), as part of "the deliberate execution of a preconcerted plan, conceived in the mind of [the company] and carried out by a central nervous system of key [company] personnel." *Id.* Applying this rationale to the Mmahat case, one could hardly refute the proposition that John Mmahat was part of the "key personnel" at Mmahat & Duffy, and the evidence in the Mmahat case brings it in line with both the reasoning and the ultimate holding of the *Ashland* decision.

This Court finds wholly distinguishable other authorities cited by FSLIC. For example, in *McBride v. Lyles,* 303 So.2d 795 (La.App. 3d Cir.1974), the Court held an insurer liable on a homeowner's policy for injuries inflicted by the insured's son in a fight at a ball game, and the Court's analysis of whether coverage should be denied because the injuries were "intended from the standpoint of the insured" focused upon the type of policy at issue (a homeowner's policy). Thus, both the type of wrongdoing and the type of policy render this case distinguishable from the Mmahat case.

FSLIC also relies on two earlier state court cases cited in *McBride, Rivers v. Brown,* 168 So.2d 400 (La.App. 3d Cir.1964) and *Baltzar v. Williams,* 254 So.2d 470 (La.App. 3d Cir.1971), for further support of its argument that Mmahat & Duffy should be covered by New England's policy. In particular, FSLIC seized upon certain language of the *Rivers* Court that an

assault committed by a company president was not an act of the company, but rather an act of the president "individually, while acting as an agent or employee of the insured corporation and was not committed or directed to be committed by the corporation as such." 168 So.2d 401–02. However, when examined in context, it appears the *Rivers* Court merely held that an assault was an "accident" within the meaning of the policy there at issue, which policy expressly provided that an assault and battery would be deemed a covered accident unless committed at the direction of the insured. In *Baltzar,* a town was held covered for the violent and unintended acts of one its deputies in making an arrest, because the town could not have intended or expected that its deputy would commit such an act.

Both these cases appear wholly distinguishable from the Mmahat case. Moreover, the type of systematic and pervasive wrong doing exhibited in the Mmahat case is completely distinguishable from the one time outbursts at issue in an assault and battery setting. Nor does this Court perceive that minimizing the deliberate conduct here in question and engaging in result oriented reasoning to force insurance coverage is the solution to the nation's savings and loan crisis. An individual in control of a savings and loan institution, whether attorney, board member, accountant or other, who engages in the type of egregious conduct revealed by the evidence in this case, could not expect to be shielded by the insurance policy in question. The Court is well aware this conclusion has the unfortunate result of denying FSLIC a significant source of funds for execution of its judgment, but the Court does not believe the insurers in this case ever intended to bear the burden for the wrongdoing here exhibited or that the insureds could have reasonably expected them to.

FSLIC also asserts this Court must apportion damages among the defendants in this case, because this issue was submitted to the Court for decision. However, none of the pre-trial or post-trial briefs addressed this issue, nor were any proposed findings of fact and conclusions of law

submitted on this question. Thus, the Court can only conclude the parties abandoned their claims for apportionment prior to judgment before and in light of the jury verdict. The Court thus rejects the contention that it is called upon to enter findings as to how much each officer and director's fault contributed to the damages awarded by the jury, even if there were enough evidence in the record to permit such additional findings, which this Court believes there is not. Thus, if called upon to do so, the Court would conclude that the defendants have failed to sustain their burden of proving the extent of fault of each director and officer.

Moreover, as stated in this Court's Order & Reasons Regarding Policy Exclusions, the jury found enough fault attributable to wrongdoing in connection with the loan to one borrower advice to award the full amount of damages claimed for that conduct alone. The Court is not therefore required to reduce the verdict by the amount of the settlements or on any other basis. Had any party been serious in pursuing an apportionment claim, any findings to be made in this regard should have been the subject of additional evidence and jury interrogatories on each director's and officer's fault. Yet, it was this Court's distinct impression that the evidence on this issue was voluntarily curtailed after the settlements reached with the directors' and officers' liability underwriters. The Court is certainly not going to reopen a case of this magnitude due to an oversight of counsel, if one occurred, particularly where as here the Court perceives no injustice in the result obtained. In this connection, FSLIC did not even seek the full amount of damages it sustained due to its rightful anticipation that such damages would not be collectible. It is not for the Court to speculate one way or the other whether the jury would have awarded any additional amounts if it had heard the complete evidence on the officers' and directors' liability.[1]

For the foregoing reasons, the motion is hereby denied.

---

**1.** The parties and their attorneys indicated to the Court that the settlement avoided extensive trial time, over several days or weeks, which would have included evidence bearing upon these issues.