**In re John Alexander COCHRANE, Debtor.**

**TUDOR OAKS LIMITED PARTNERSHIP, Plaintiff,**

v.

**John A. COCHRANE, Defendant.**

Bankruptcy No. 3–93–2056.
Adv. No. 3–94–101.

United States Bankruptcy Court, D. Minnesota, Third Division.

March 29, 1995.

Michael J. Iannacone, St. Paul, MN, for defendant.

William J. Fisher, Minneapolis, MN, for plaintiff.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

GREGORY F. KISHEL, Bankruptcy Judge.

This adversary proceeding came on before the Court on December 13, 1994, for hearing

on the Plaintiff's motion for summary judgment. The Plaintiff appeared by its attorney, William J. Fisher. The Defendant appeared by his attorney, Michael J. Iannacone. Upon the moving and responsive documents and the arguments and legal memoranda submitted by counsel, the Court grants the motion.

The Defendant is a petitioner under Chapter 7 before this Court.[1] The Defendant scheduled the Plaintiff as a creditor in his original Schedule F. The Plaintiff's claim was first evidenced by a judgment that was entered in the Minnesota State District Court for the Fourth Judicial District, Hennepin County, after a trial by jury and pursuant to a July 7, 1992 order of that court.[2] Various post-judgment proceedings and an appeal by the Defendant then ensued. On appeal, the amount of the jury's award of damages to the Plaintiff was modified. On remand, the Hennepin County District Court liquidated the debt fully and finally, in a judgment entered pursuant to a February 24, 1994 order.[3] Via this adversary proceeding, the Plaintiff seeks a determination that this debt is excepted from discharge in bankruptcy by operation of 11 U.S.C. § 523(a)(4).[4]

The Plaintiff now moves for summary judgment on this request for relief, pursuant to FED.R.BANKR.P. 7056.[5]

The first requirement of Rule 56 is, of course, a lack of triable fact issues—"no genuine issue of material fact." To establish this, the Plaintiff relies entirely on the doctrine of collateral estoppel, or "issue preclusion."

■■■ As the Supreme Court has recognized, collateral estoppel does lie in bankruptcy proceedings, as to previously-adjudicated fact issues that are common elements of a prior cause of action under nonbankruptcy law and of a nondischargeable debt under 11 U.S.C. § 523(a). *Grogan v. Garner,* 498 U.S. 279, 284–85 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991). Where prepetition litigation between a complaining creditor and a debtor has produced fact adjudications of adequate specificity, a creditor may move for summary judgment on the basis of the prior findings of fact. The issue in such a motion is purely one of law—whether the findings made by the nonbankruptcy tribunal meet the precise legal requirements of the theory of nondischargeability on which the creditor relies. The Plaintiff frames its motion in this fashion, and only in this fashion.[6]

1. On December 21, 1992, the Defendant filed a voluntary petition for reorganization under Chapter 11 in the United States Bankruptcy Court for the Middle District of Florida. On motion of a scheduled creditor, that court (Paskay, C.J.) ordered a change of venue to the District of Minnesota. On February 15, 1994, this Court converted the Debtor's case to one under Chapter 7.

2. On the Defendant's bankruptcy schedules and in the pleadings for the state court action, the Plaintiff was denominated, respectively, as "Tudor Oaks Condo Project" and "Tudor Oaks Condominium Project." In the state-court pleadings, the phrase "an Ontario Limited Partnership" was added to that cognomen. These forms of name are different from the one with which the Plaintiff has identified itself in the caption to this adversary proceeding. To support one of his substantive defenses to this motion, the Defendant attempts to make much out of the difference. This point is nothing but quibbling over a non-material happenstance. A bit of sloppiness in drafting fully accounts for the difference; there is no proof of record to rebut the proposition that all of these names signify the same entity. Contrary to his attorney's insistence, the

Defendant very well knows "who's suing [him] and where they're coming from."

3. The record does not contain a copy of the judgment or of the clerk's notice of its entry, and the date on which the judgment itself was entered does not otherwise appear from the record.

4. In pertinent part, this statute excepts from discharge in any debt "for fraud or defalcation while acting in a fiduciary capacity ..."

5. This rule makes FED.R.CIV.P. 56 applicable to adversary proceedings in bankruptcy. In pertinent part, FED.R.CIV.P. 56(c) provides that, upon a motion for summary judgment,

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits [submitted in support of the motion], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

6. Obviously, if the state courts' findings do not match the elements of § 523(a)(4), the motion must be denied. In that case, this adversary

It is necessary, then, to first recite the pertinent facts that were settled by the Minnesota state courts' decisions.[7]

At all relevant times, the Plaintiff was a limited partnership.[8] It purchased certain real estate in Eden Prairie, Minnesota, planning to develop a residential condominium project there. Some lending entity within the First Bank system provided financing to the Plaintiff for acquisition and/or construction. The project financially failed, as did many such real estate developments in the mid- and late 1980s. First Bank foreclosed its mortgage, and bid in at the June 12, 1985 sheriff's sale for $5,600,000.00. It then prosecuted some sort of deficiency judgment action[9] against the Plaintiff and its liable partners.

The Defendant is an attorney at law licensed to practice in the state of Minnesota and numerous federal courts. He has substantial experience in complex business litigation. Two out of the Plaintiff's three partners retained him to represent themselves and the Plaintiff in defending the deficiency judgment action. Under the terms of engagement, the Defendant was to charge them a flat fee of $20,000.00.

Apparently, at some point early in the deficiency-judgment litigation, First Bank made an overture of settlement to the Defendant's clients. It offered to release the deficiency claims if the Defendant's clients aided the Bank's ultimate recovery by facilitating a sale of the underlying property.[10]

The Defendant then assembled a group of investors to purchase First Bank's rights under the sheriff's certificate of sale. The investors incorporated under the name KSCS Properties, Inc. ("KSCS"). The Defendant did not disclose to his clients, the Plaintiff and its partners, that he was a principal in KSCS, to the extent of owning 25 percent of its outstanding shares.

The Plaintiff, the two client-partners, and the Defendant then arrived at separate terms of engagement for his services in connection with the contemplated sale of the rights under the sheriff's certificate. As this second phase of the retention went forward, the Plaintiff's partners all expected that the Plaintiff would retain a 20 percent fractional ownership in the post-closing configuration of property rights in the underlying real estate.[11] Ultimately, however, the Defendant brokered a transaction which led to the following results:

---

proceeding could still proceed to trial, where the issue would be presented for decision on the trial testimony and exhibits.

7. The Hennepin County District Court (Larson, J.) submitted the state-court plaintiffs' three claims of breach of fiduciary duty to the jury on special interrogatories. Three of these interrogatories addressed whether the Defendant had breached a fiduciary duty to the Plaintiff in separate alleged instances. The jury answered in the affirmative to all three. In his July 7, 1992 order for judgment, Judge Larson merged these answers into findings of fact. Then, in its unpublished opinion, the Minnesota Court of Appeals recited the factual backdrop in some detail, summarizing the parties' legal and contractual relationships and the history of the transactions that gave rise to the Plaintiff's claim. *S.B. McLaughlin & Co., Ltd., et al. v. Cochrane,* C4–92–2081, slip op. at 2–3, 1993 WL 231672 (Minn.Ct.App. June 29, 1993). Most of the following recitation is taken from that opinion. Undoubtedly, the appellate court based its findings on the uncontroverted basic evidence presented at the trial, as well as any controverted evidence that properly supported the summary fact findings made in the jury's answers to special interrogatories.

8. Though the Minnesota state courts did not specifically find as such, the Plaintiff was organized under the laws of the province of Ontario, Canada.

9. This is the designation given by the Minnesota Court of Appeals in its opinion. The record before this Court is silent as to many of the surrounding circumstances. If this designation was accurate, however, First Bank must have bid in at the sheriff's sale for an amount less than the outstanding debt chargeable against the property under the original loans.

10. Obviously, in structuring the offer this way First Bank sought to rid itself of both the legal and the financial aftermath of its failed investment in the project, in one step, and at a substantial loss.

11. The record before this Court does not reveal just how the real estate was to be held after the closing—"direct" ownership by a group of named grantees, or through a new grantee-entity in which participants would hold equity interests. The omission is not material, but it requires some vagueness in describing just what was to come out of the whole transaction.

1. The Defendant's clients agreed that he would receive a 20 percent fractional ownership interest in the underlying real estate, as his fee for finding a purchaser and negotiating and closing the sale of the sheriff's certificate, and he did receive such a share;

2. KSCS took a 60 percent ownership interest in the real estate; and

3. Two of KSCS's other shareholders, Rolland Stinski and Bill Keifer, Sr., took title to the final 20 percent ownership interest in the real estate, in their individual right.

Apparently, the purchase of the sheriff's certificate and the reconfiguration of ownership interests in the real estate closed in fairly short order.

At some point after that closing, the Plaintiff's principals discovered the extent of the Defendant's involvement and interest in KSCS. In 1987, the Plaintiff and two of its partners sued the Defendant in the Hennepin County District Court. They alleged that they had suffered substantial damages as a result of a breach of fiduciary duty on the part of the Defendant. The action consumed years of litigation, including an abortive removal of the lawsuit to the United States District Court for this District, a remand, and several motions for summary judgment. Finally it went to trial in mid–1992. In its answers to special interrogatories, the jury found that the Defendant had breached a fiduciary duty to the Plaintiff in three instances: by personally participating in the purchase of the sheriff's certificate as a shareholder in KSCS, by his involvement in a transaction that defeated the Plaintiff's expectation that it would retain the 20 percent fractional interest in the real estate; and by charging a 20 percent contingency fee for his services in the second phase of the retention.

In its opinion, the Minnesota Court of Appeals analyzed the jury's award of damages at some length, and then reduced the award of damages to the Plaintiff from the Defendant by approximately $400,000.00.[12] It af-

firmed the jury's finding of causation between the Defendant's adjudged breach of fiduciary duty and the injury the Plaintiff suffered. After disposing of numerous other issues raised by the Defendant,[13] it remanded. On remand, Judge Larson analyzed the jury's verdict and the extant evidence in light of the rulings of the Court of Appeals, and ordered entry of the judgment as to which dischargeability is in dispute here.

The issue presented on this motion is actually quite simple: do the facts as found by the state courts demonstrate a "defalcation while acting within a fiduciary capacity" within the meaning of § 523(a)(4)? If they do, the Plaintiff wins.

It has long been the law the that the "fiduciary" status in question under § 523(a)(4) must arise under an express, pre-existing trust. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153–54, 79 L.Ed. 393 (1934) (decided under analog to § 523(a)(4) in Bankruptcy Act of 1898); *In re Dloogoff*, 600 F.2d 166, 170 (8th Cir.1979) (ditto); *In re Long*, 774 F.2d 875, 878 (8th Cir.1985); *In re Koelfgen*, 87 B.R. 993, 996 (Bankr.D.Minn.1988); *In re Crea*, 31 B.R. 239, 244 (Bankr.D.Minn.1983). "The [Bankruptcy] Code does not reach constructive trustees, designated as such because of misconduct." *In re Long*, 774 F.2d at 878. *See also In re Crea*, 31 B.R. at 244. The fiduciary relationship, then, must have been created before the acts complained of. *In re Barker*, 40 B.R. 356, 358–59 (Bankr.D.Minn.1984).

Federal bankruptcy law, then, limits the concept of "fiduciary" to persons acting under an objectively manifested, pre-existing, and binding relationship. However, the threshold existence of that relationship—whether arising under an indenture of trust or otherwise—is controlled by state law. *In re Bennett*, 989 F.2d 779, 784 (5th Cir.1993); *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir.1986); *In re Interstate Agency, Inc.*, 760 F.2d 121, 124 (6th Cir.1985) (decided under Bankruptcy Act of 1898); *In re Pedrazzini*,

---

12. It also reversed that portion of the trial court's judgment that had held the Defendant directly and additionally liable to one of the Plaintiff's general partners in its individual right.

13. Apparently, the Defendant did not designate the jury's basic finding of breach of fiduciary duty as an issue for his appeal.

644 F.2d 756, 758 (9th Cir.1981) (ditto); *In re Angelle,* 610 F.2d 1335, 1341 (5th Cir.1980) (ditto).

■ Over eighty years ago, the Minnesota Supreme Court noted that

> [i]t is well settled that the obligation of fidelity which an attorney owes to his client is a continuing one, and that he cannot make use of any knowledge acquired from his client, or through his professional relation, for his own advantage, adverse to the interests of his client, or those claiming through him …

*Sanford v. Flint,* 108 Minn. 399, 401, 122 N.W. 315 (1909). More to the point, and more recently, it held:

> The relation between an attorney and his client is *a fiduciary one of the highest trust and confidence* and, as long as the relationship or the influence thereof exists, requires the attorney to observe the utmost good faith and candor and *not to allow his private interest to conflict with those of his client.* The relation places the attorney under no legal disability in dealing with his client but simply imposes on him *a much higher standard of good faith* than is required in business dealings where the parties trade at arms-length. Where the relationship exists, *these strict rules of fiduciary conduct* cast upon the attorney the burden of proving that he has been absolutely frank and fair with his client and has taken no advantage of the confidence arising from such professional relation.

*Colstad v. Levine,* 243 Minn. 279, 286–87, 67 N.W.2d 648, 654 (1954) (emphasis added; emphasis that was in original, and citations in original, deleted). As a general proposition, any transaction by which an attorney acquires property from his client is discouraged, and is subject to close scrutiny. In such transactions,

> [t]he burden of proving entire fairness, adequacy of consideration and absolute good faith, is put upon the attorney.

*Mercer v. McHie,* 141 Minn. 144, 146, 169 N.W. 531 (1918).

■ Clearly, then, under Minnesota law, an attorney is utterly prohibited from self-dealing in the subject matter of his retention, to the detriment of an unknowing client. At its heart, this is a defined obligation not to elevate the attorney's self-interest over his client's interests. This is the very essence of a fiduciary duty. The jury in the Hennepin County District Court action unquestionably found that the Defendant had breached this duty of fidelity and good faith to the Plaintiff.

The Defendant obdurately denies that this adjudicated breach equates to the "defalcation" contemplated by § 523(a)(4). He makes two arguments on this point. Both of them lack merit.

■ First, contrary to the Defendant's argument, there need not be an "express trust" within the strict definition of nonbankruptcy law, for there to have been a "fiduciary capacity" cognizable under § 523(a)(4).

In all fairness on this point, one must acknowledge that the Defendant "held nothing in trust," as his counsel points out. The Plaintiff and its partners never gave him control over a defined trust *res,* whether in the form of a retainer or an escrow, and they never named him as a trustee in a written instrument creating a formal trust.[14] Beyond that—though, admittedly, it is irrelevant to the present analysis—the Minnesota state courts denied his clients' request for the imposition of a constructive trust against the subject real estate. Too, in passing on the existence of fiduciary capacity in the cases before them, virtually all of the reported decisions under § 523(a)(4) from the District of Minnesota and the Eighth Circuit make reference to the elements of a formal trust under nonbankruptcy law. *In re Long,* 774 F.2d at 878; *In re Dloogoff,* 600 F.2d at

---

14. In *In re Bush's Trust,* 249 Minn. 36, 81 N.W.2d 615 (1957), the elements of an express trust under Minnesota law were identified as: … (1) a designated trustee subject to enforceable duties, (2) a designated beneficiary vested with enforceable rights, and (3) a definite trust res wherein the trustee's title and estate is separated from the vested beneficial interest of the beneficiary … 249 Minn. at 43, 81 N.W.2d at 620. *See also Schug v. Michael,* 310 Minn. 22, 27, 245 N.W.2d 587, 590–91 (1976).

169–70; *In re Koelfgen,* 87 B.R. at 996–97; *In re Barker,* 40 B.R. at 359; *In re Crea,* 31 B.R. at 244–45.

■ However, as a matter of the same nonbankruptcy law, one thing is absolutely clear: the concept of "fiduciary" is broader than the concept of "trustee under an express trust."[15] The pronouncement quoted from *Colstad v. Levine* clearly is to this effect; it recognizes that an attorney is often put into a position of relative power over a client's options and opportunities. The manipulation of that power to benefit the attorney at the expense of the client is strictly forbidden. Such positions of power do not always involve the deposit of identifiable assets in trust with the attorney. Correspondingly, the professional's fiduciary duty of forbearance is not limited to situations involving segregated, entrusted assets. *See* Janet A. Flaccus, *Attorney Malpractice Judgments, Bankruptcy Discharge, and Professional Responsibility,* 4 J.BANKR.L. & PRACT. 219, 227 (1995).

Recognizing the special nuances of the attorney-client relationship, virtually all of the Bankruptcy Courts that have reported decisions involving the dischargeability of debts owing by debtor-attorneys to their former clients have held, expressly or tacitly, that an attorney's generalized professional duties of fidelity, good faith, and "utmost fairness" to a client are sufficient in themselves to place the attorney into a "fiduciary capacity" cognizable under § 523(a)(4) as to the subject matter of the retention. *F.D.I.C. v. Mmahat,* 907 F.2d 546, 549–50 (5th Cir.1990), *aff'g* 97 B.R. 293, 296 (E.D.La.1988), *cert. den.,* 499 U.S. 936, 111 S.Ct. 1387, 113 L.Ed.2d 444 (1991) (breaches of fiduciary duty of attorney/board member for failed financial institution, in advising board to make improvident loans from which his law firm made substantial fees in transactions, gave rise to debt nondischargeable under § 523(a)(4)); *Kwiat v. Doucette,* 81 B.R. 184, 188–89 (D.Mass. 1987) (nondischargeable debt created by attorney's knowing breach of terms of retention agreement with client, where client's tort recovery had been substantially reduced by amount of fees that attorney had agreed to recover independently from opposing party); *In re McDowell,* 162 B.R. 136, 137 (Bankr. N.D.Ohio 1993) (sequence of wrongdoing by attorney in relation to prosecution of tort claims and disposition of proceeds of settlement, resulting in loss of client's recovery, was defalcation by fiduciary under § 523(a)(4)); *In re Kudla,* 105 B.R. 985, 990–91 (Bankr.D.Colo.1989) (failure to preserve $100,000.00 deposited into trust breached "the highest standard of fiduciary obligations," which law imposes on attorney-client relationship, mandating determination of nondischargeability); *In re Janikowski,* 60 B.R. 784, 790 (Bankr.N.D.Ill.1986) (attorney's failure to record deeds and instruments entrusted to him may constitute defalcation by fiduciary under § 523(a)(4), given dictate of state law that attorneys maintain "fidelity to clients with an eye single to their best interests"). *Cf. In re Gans,* 75 B.R. 474, 491–92 (Bankr.S.D.N.Y.1987) (where debt in question was result of personal loan from client to lawyer and transaction did not come out of attorney-client relationship, debt is not excepted from discharge by § 523(a)(4)).

■ These decisions all fully comport with the Congressional intent that appears with utter clarity from the very presence of § 523(a)(4) in the Code: under American law, the sensitive relationship of a fiduciary to its beneficiary is so important that those

---

**15.** Put another way: while a trustee under an express trust is always a fiduciary, a fiduciary need not always be a trustee under an express trust. Many Bankruptcy Courts have agreed with this general proposition, on rationales that vary greatly in their degree of development, and in the extent to which they rely on cited state-law authority. *E.g., In re Brown,* 131 B.R. 900, 905 (Bankr.D.Me.1991) (corporate officer's misapplication of company's assets to his personal debts gave rise to debt nondischargeable under § 523(a)(4), where "in general state law sense" he had been fiduciary to company); *In re Sax,* 106 B.R. 534, 538 (Bankr.N.D.Ill.1989) (former director and controlling shareholder of failed bank breached fiduciary duty when he obtained loans from bank for his own business corporation without board authorization and in violation of lending guidelines; debt held nondischargeable); *In re Golden,* 54 B.R. 957, 964 (Bankr. D.Mass.1985) (acts of corporation's sales agent in accepting "kickbacks" from trade vendor and taking clandestine "consulting" job with vendor, gave rise to nondischargeability under § 523(a)(4), as did misapplication of employer's funds earmarked for payment of trade payables).

who violate their duty of special trust under it are to be denied the refuge of discharge in bankruptcy, regardless of the origin and nature of their breach. *See In re Baird,* 114 B.R. 198, 204 (9th Cir. BAP 1990) ("defalcation" within meaning of § 523(a)(4) "includes innocent, as well as intentional or negligent defaults so as to reach the [wrongful] conduct of all fiduciaries ..."); *In re Gonzales,* 22 B.R. 58, 59 (9th Cir. BAP 1982); *In re Anderson,* 64 B.R. 331, 334 (Bankr.N.D.Ill. 1986).

■ For basically the same reason, the Defendant's second substantive argument also fails. The Defendant argues, at some length but in a rather unfocused fashion, that the "mere breach of fiduciary duty" adjudicated in the Minnesota state courts does not rise to the level of the "defalcation" proscribed by § 523(a)(4). This argument has been rejected for over fifty years:

> Colloquially perhaps the word, 'defalcation,' ordinarily implies some moral dereliction, but in this context it may have included innocent defaults, so as to include all fiduciaries who for any reason were short in their accounts.... Whatever was the original meaning of 'defalcation,' it must here have covered other defaults than deliberate malversations, else it added nothing to the [other] words [in the statute], 'fraud or embezzlement.'

*Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510, 511 (2d Cir.1937) (L. Hand, J.) (examining history of statutory predecessor to § 523(a)(4) in Bankruptcy Act of 1898, back to Bankruptcy Act of 1800). Elaborating on this thought, numerous courts have declined to require a complaining creditor to prove that the defalcating fiduciary harbored malice, ill-will, fraud, or other specific intent to cause harm to his beneficiary. They have limned this principle in various formulations. *See, e.g., In re Bennett,*

989 F.2d at 790 (defining defalcation as "a willful neglect of duty" that need not be "accompanied by fraud or embezzlement"); *In re Moreno,* 892 F.2d 417, 421 (5th Cir. 1990) (ditto); *American Ins. Co. v. Lucas,* 41 B.R. 923, 925 (W.D.Pa.1984); *Martino v. Brown,* 34 B.R. 116, 117 (D.N.M.1983); *In re Baird,* 114 B.R. at 204; *In re Crosswhite,* 91 B.R. 156, 160 (Bankr.M.D.Fla.1988) (defalcation may occur "even where the merest deficit is caused by" fiduciary's conduct, and even where fiduciary has not derived benefit from shortage); *In re Mullin,* 91 B.R. 175, 176 (Bankr.S.D.Fla.1988) (finding of defalcation "does not require intentional conduct"); *In re Kelley,* 84 B.R. 225, 230 (Bankr. M.D.Fla.1988) ("no element of intent or bad faith need ... be shown" for determination that defalcation has taken place); *In re Pavelka,* 79 B.R. 228, 232 (Bankr.E.D.Pa.1987) ("[n]o specific intent is necessary to find" defalcation under § 523(a)(4)); *In re Codias,* 78 B.R. 344, 346 (Bankr.S.D.Fla.1987) (defalcation may be established even where fiduciary had committed only negligence or ignorance); *In re Anderson,* 64 B.R. at 334 (defalcation "includes innocent defaults in duty"). *Cf. Meyer v. Rigdon,* 36 F.3d 1375, 1382–85 (7th Cir.1994) (applying 11 U.S.C. § 523(a)(11); collecting cases, and concluding that "mere negligent breach of a fiduciary duty" is not "defalcation" as contemplated by that provision).

■ It is clear, then, that the Minnesota state courts' unadorned finding that the Defendant had breached his fiduciary duty to the Plaintiff in three separate instances is sufficient to make out a "defalcation" within the contemplation of § 523(a)(4).[16] This conclusion seems particularly merited in a case involving an attorney-debtor and a client-creditor: given the special trust inherent in the underlying relationship, the key aspect of

---

**16.** One can reach this conclusion without having to decide whether the threshold for intent is the negligible one of "innocence" or "ignorance" in the default, or the more challenging one of "willfulness" in the neglect of fiduciary duty; the record meets the latter standard. "Willfulness" is generally defined as deliberateness in action, rather than negligence. *In re Long,* 774 F.2d at 880. (Though the *Long* court adopted this definition for its analysis of a count under 11 U.S.C.

§ 523(a)(6), it really was doing no more than adopting a common definition used in many areas of American law.) The Defendant cannot deny that he acted knowingly and deliberately to set up KSCS, to participate in it, and to shepherd the transaction to fruition, and he does not do so. Whatever the characterization to be placed on a debtor's *scienter* for the purposes of § 523(a)(4), the state court's findings satisfy it.

the analysis under § 523(a)(4) should be on the compromise of loyalties—not on the finessed, subjective rationale that the attorney may have used to justify it to himself.

 There are no other issues that deserve extended discussion.[17] This all means, then, that the debt that the Minnesota state courts reduced to judgment is excepted from discharge in bankruptcy.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:

1. That the Plaintiff's motion for summary judgment is granted.

2. That the Defendant's debt to the Plaintiff, as reduced to judgment by the Minnesota State District Court for the Fourth Judicial District, Hennepin County, pursuant to an order for judgment dated February 24, 1994, under the caption of *S.B. McLaughlin & Company, Ltd., et al. v. John Cochrane, et al,* Court File No. 87–11035, was excepted from the discharge in bankruptcy granted to the Defendant on May 24, 1994, in BKY 3-93-2056, by operation of 11 U.S.C. § 523(a)(4).

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

**17.** As he has (without success) in earlier proceedings in his main bankruptcy case, the Defendant maintains that the named Plaintiff lacks standing to obtain relief here because it was dissolved by operation of Ontario law before his bankruptcy filing. This argument is a red herring. Regardless of whether the named party-plaintiff is a valid, subsisting legal entity with capacity to sue or be sued, its one remaining partner has a right under Ontario law to wind up its affairs and to continue litigation under its name to do so. During the pendency of this adversary proceeding, the Hennepin County District Court held to that effect, in ruling against the Defendant in his independent lawsuit for relief from the original judgment in the Plaintiff's favor. *Cochrane v. Tudor Oaks Condominium Project, et al.,* No. 93-16553, Memorandum to Order Granting Defendant's Motion for Summary Judgment at 14–15 (Minn. State D.Ct., 4th Jud.Dist. July 6, 1994). The Defendant is collaterally bound by this ruling, *In re Miera,* 926 F.2d 741, 743 (8th Cir. 1991), even though he apparently has an appeal from that judgment pending, *Robi v. Five Platters, Inc.,* 838 F.2d 318, 327 (9th Cir.1988).